## GEORGE C. MOON v. WILLIAM ROLLINS, AND MARTIN CONDREY.

POSSESSION OF REAL ESTATE.—The person who first takes possession of land makes it his by occupancy as against all the world except the true owner, and the land remains his as against all persons entering afterwards without his consent, and without title, unless he abandons it, or it is taken from him by some method known to the law.

ABANDONMENT OF LAND.—If the person in possession of land leaves it, with the intention of returning, he does not abandon it. An abandonment takes place only when one in possession leaves with the intention of not again resuming possession. Abandonment is, therefore, a question of intention.

RIGHT OF ENTRY ON LAND NOT BARRED BY TIME.—If one in possession of land leaves it, with the intention of returning, his mere failure to occupy the land for a period of five years does not necessarily constitute an abandonment. Until abandoned he may recover against a trespasser, unless his action has become barred by a five years adverse possession.

EVIDENCE TO SHOW ABANDONMENT.—Mere lapse of ·time does not constitute an abandonment, but it may be ·given in evidence for the purpose of ascertaining the intention of the parties.

TITLE BY PRIOR POSSESSION.—When title by prior possession is once shown, there is no presumption of its loss; but an abandonment must be made to appear affirmatively by the party relying on it to defeat a recovery.

WHEN JUDGMENT NOT REVERSED FOR ERROR.—A judgment will not be reversed on account of the admission of erroneous testimony, if it can be seen from the record that the appealing party suffered no injury by its admission.

TESTIMONY IN EJECTMENT.—When A. sues B. to recover possession of land, and relies on prior possession, he may on the trial introduce in evidence a judgment which he recovered against C., before B.'s entry, for possession of the same land, and the acts of the officer under it putting him in possession. Such testimony is relevant on the question of A.'s possession.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

This was an action of ejectment commenced March 3d, 1865, to recover a lot of land in the City and County of San Francisco, on the corner of Mission and Ninth streets, being one hundred and thirteen feet by one hundred and thirty-one, in the north corner of Block Three.

The testimony tended to show that in 1850 and 1851 one Kisling was in possession of one hundred and sixty acres of land. The demanded premises constituted a portion of this tract. June 14th, 1851, Kisling conveyed Block Three, including

the demanded premises, to William P. Humphries, who two days afterwards conveyed to George C. Sindle. The deeds were recorded July 26th, 1853. At the time of the last conveyance, Block Three had no improvements on it, but was covered with oak trees. Sindle built a brush fence around the block, and cut down the timber on it and burned it into charcoal. Sindle did not reside on the block. In 1853, Nolan and Donellan put a fence around a lot twenty-five feet front on Mission street, in the middle of the demanded premises, leaving a part of the same on either side. This fence was built in May or June, 1853. Soon after, in the Fall of 1853, McKenna was living in a house on the demanded premises, claiming the same under a deed from Nolan and Donellan. November 9th, 1853, Sindle sued McKenna to recover possession of Block Three, and on the 9th of March, 1854, recovered judgment against him. A writ of possession was issued, and the Sheriff returned that he had put him in possession. Pending this suit Sindle conveyed the block— one third to Moon, the plaintiff, one third to Joseph Lampson, and one third to Brown, Pratt, and Tracy. After the Sheriff had executed the writ of possession, the cotenants in the block (Sindle's grantees) made partition of the same, and the demanded premises fell to Lampson. The testimony tended to show that before the partition they built a fence around the whole block, consisting of posts five feet high, eight feet apart, with two rails two by three inches nailed on, one on top and the other two feet from the ground. McKenna about this time moved on to the lot fenced by Nolan and Donellan. Lampson did not live on the demanded premises.

In 1855, one Ann Scott recovered a judgment against him, under which the demanded premises were sold, and were bid in by her. She resided in New York City, and in 1861 conveyed to Mary Harrison, who also resided in New York; Harrison conveyed to one Hastings in July, 1863, and in October, 1863, Hastings conveyed to the plaintiff.

The testimony also tended to show that McKenna, after

1855, was away from the house, and from that time until 1861 the same was but seldom occupied, and the fence became much dilapidated.   In 1861 Rollins took possession of the demanded premises.   There was evidence tending to show that when Rollins entered he claimed to own the twenty-five feet fenced in by Nolan and Donellan, but acknowledged the title in the remainder of the demanded premises to be in Scott or Harrison, and requested Moon, the plaintiff, to unite with him in purchasing; and that Moon then borrowed the money to make the purchase, but Rollins refused to join in it, and claimed title to the whole property.

On the trial the plaintiff offered in evidence the judgment against McKenna, who had died, and the writ of restitution, with the Sheriff's return.   The defendant objected because he was the representative of McKenna, and because the same were irrelevant, the judgment being against a party who was a stranger to this action; but the Court overruled the objections.

The plaintiff recovered judgment for possession of that part of the demanded premises lying each side of the twenty-five feet fenced in by Nolan and Donellan.

The defendants appealed.

The other facts are stated in the opinion of the Court.

*R. R. Provines*, for Appellant.

Independent of the question of abandonment, to the enforcement of a right to real property alleged to have been acquired by mere possession, it is essential that that possession be shown to have been continuous.

The *animus revertendi* which can qualify the effect of a present relinquishment of the use, and an open departure from the land, by one who has no actual title, must itself be indicated by open and unequivocal facts, connected with the manner and purpose of the departure and the condition in which the premises are left.   (*Myers* v. *McMillan's Heirs*, 4 Dana, 489.)

The judgment and proceedings under it in Sindle v. McKenna were inadmissible. The judgment was simply that, as against the defendant, the plaintiff recover the possession—not that he be kept in or be deemed to be in forever thereafter. (*Roberts* v. *Unger*, 30 Cal. 676; *Calderwood* v. *Brooks*, 28 Cal. 156.)

The plaintiff's claim to recover is based upon the alleged prior possession of himself and his grantors, and upon this only. There is nothing whatever, therefore, to prevent the statute from operating as a bar. He has wholly failed to show title in himself, or in those under whom he claims under the Van Ness Ordinance, nor does he pretend to have derived title through any grant from the authorities of Spain or Mexico. He has wholly failed, therefore, to connect himself with any "title derived from the Spanish or Mexican Government, or the authorities thereof," and, consequently, to bring himself within the proviso of the sixth section of the Statute of Limitations.

*B. S. Brooks*, for Respondent

Mr. Justice RHODES, in his opinion, refers to the notes to *Nepeau* v. *Doe*, in 2 Smith's Leading Cases, page five hundred and sixty-one.. It seems to me that the authority cited sustains the views of Mr. Justice SAWYER and Mr. Chief Justice CURREY:

"1. Possession must be actual. There must, therefore, be in all cases an entry, in order that an ouster may be made, and an adverse possession begun. And it would seem that the legal notion of an entry to divest a possession is the same that is required to revest a possession, viz: a going upon the land with palpable intent to claim the possession as his own—*animo clamandi possessionis.* (*Miller et al.* v. *Shaw*, 7 Serg. & Rawle, 129; *Lessee of Holtzapple and Wife* v. *Philebaum*, 4 Wash. C. C. 356; *Altemas* v. *Campbell*, 9 Watts, 28.) This intention to claim and possess the land is one of the qualities

indispensable to constitute a disseizin, as distinguished from a trespass. (*Ewing* v. *Burnett*, 11 Peters, 41.)"

And he cites various authorities, illustrating and sustaining this position; and on page five hundred and sixty-two he says:

"If the property is of a character to admit of permanent useful improvement, the possession should be kept up during the statutory period, by actual residence or by continued cultivation and inclosure;" citing a number of authorities, and saying that either of these will do; and then proceeds: "But if the land is not such as to admit of residence or improvement, such use and occupation of it as from its nature it is susceptible of, with claim of ownership, will be an actual possession, (*West* v. *Lanier*, 9 Humphreys, 762, 771,) but intention will not be, (he must keep his flag flying.) (*Stephens* v. *Leach*, 19 Penn. St. 265.)"

There is a distinction between the two classes of cases, prior possession and adverse possession, which is maintained in all the reported cases; and there is an obvious reason for it. By the entry of the plaintiff's grantee, under color of title, he is deemed in law the owner, as we have seen. (*Bird* v. *Libros*, 9 Cal. 7.)

By the Court, SAWYER, C. J.:

The first point made is, that the evidence is insufficient to justify the findings, in several particulars specified. We do not think we should be justified in setting aside the findings on this ground.

In *Richardson* v. *McNulty*, 24 Cal. 345, we said, on the question of title by possession and of abandonment: "By the act of occupancy the plaintiff made it his, and manifested his intention to do so. Once his, it continues his until he manifests his intention to part with it in some manner known to the law. He may sell it, or give it to another, or transfer it

in any other mode authorized by law, (thereby preserving the continuity of possession,) or he may abandon it. In doing the latter he must leave it free to the occupation of the next comer, whoever he may be, without any intention to repossess it or reclaim it for himself in any event, and regardless and indifferent as to what may become of it in the future. When this is done a vacancy in the possession is created, and the land once more reverts to its former condition, and becomes once more *publici juris*, and then, and not until then, an abandonment taken place." So in *St. John* v. *Kidd*, 26 Cal. 272, we said: "Whereas the principal question involved in the defense of abandonment *is one of intention*, was the ground left by the locator without any *intention of returning*, or making any further use of it?"

In *Lawrence* v. *Fulton*, the Court substantially held that lapse of time does not of itself constitute an abandonment, but that it is only a circumstance for the jury to consider in determining the question whether there was an abandonment; or, in other words, the question is one of *intent*. So in *Waring* v. *Crow*, 11 Cal. 369, where the District Court instructed the jury that, on a question of abandonment, "the intention alone governs," and that, if the party in possession "left with the intention of returning, he might do so at any time within five years, provided there was no rule, usage, or custom of miners of such notorious character as to raise a presumption of an intention to abandon." This was held, on appeal, to "present the law fairly and clearly to the jury." (11 Cal. 372.) It was only necessary for the purpose of the case to go so far, and nothing was said as to a period of time beyond five years. But if a party may return in five years, it is not apparent why he may not return in five years and one month or two months, unless an adverse possession has barred the right of entry. It is a question of *intention*, and has been so held over and over again, and *not* a question of *time*, except so far as the jury are entitled to consider lapse of time in connection with other circumstances of claim, or non-claim, and acts of ownership and dominion,

or a want of such acts, for the purpose of ascertaining the intention. In *Keene* v. *Cannovan*, 21 Cal. 293, the plaintiff's grantor had been in possession up to January, 1851, when his building was burned, and it does not appear that he ever afterwards occupied, or even fenced it. In fact it does appear that he was not in possession after the Summer of 1852. The action was commenced in 1860, some nine years after the fire. The District Court charged the jury that the question before them was one of prior possession, as neither party showed title, that if they found a prior possession in said plaintiff's grantor, it was sufficient to maintain the action, unless abandoned, "that the question of abandonment was one of *intention*, of which they were to judge exclusively." Plaintiff had judgment, and, on appeal, the Court, by Mr. Chief Justice FIELD, say: " *The charge to the jury on the subject of abandonment was correct. The charge was that the question of abandonment was one of intention, of which the jury was to judge exclusively, and that in order to do so they must take into consideration all the facts and circumstances before them. The question was correctly stated; it was plainly one of intention to be gathered from the facts.* There was little evidence on the subject, *none from which the Court would have been warranted in taking it from the jury.* There are cases, undoubtedly, in which an abandonment may be inferred from the lapse of time, and the delay of the first occupant in asserting his claim to the possession against parties subsequently entering upon the premises. But in such cases the leaving of the premises must have been voluntary, *and without any expressed intention to resume the possession.* In the case at bar, it appears that when Mondolet ceased to occupy in person the premises he left an agent in charge of them. *This circumstance is of itself sufficient to rebut the presumption of abandonment arising from the fact that he ceased to occupy them, and to render the question, whether in fact he did or did not abandon them, one for the consideration of the jury.*" And on petition for rehearing the Court say: " *The possession of Mondolet was evidence of seizin in fee in him, and no further or higher evidence of title was*

*required to enable the plaintiff, claiming through him, to recover, until the defendant had shown an anterior possession, or had traced title from a paramount source."* It must also be remembered, that after title by possession is once shown, there is no presumption of its loss, but an abandonment must be made to appear affirmatively by the party relying upon it to defeat a recovery. Thus it has been uniformly held down to and including *Bell* v. *Bedrock Tunnel and Mining Company, ante,* 214, that abandonment is a question of intention, to be ascertained by the jury from a consideration of all the circumstances of the case. And "upon a question of abandonment a wide range should be allowed, for it is generally only from facts and circumstances that the truth is to be discovered, and both parties should be allowed to prove any fact or circumstance from which any aid for the solution of the question can be derived." (*Willson* v. *Cleaveland,* 30 Cal. 202.) Upon an examination of the cases cited, it will be found that slight circumstances have been allowed to rebut the inference of abandonment, arising from long disuse.

In this case there was evidence amply sufficient to show a possession once acquired by plaintiff's grantors, and the Court so found. There was then left only the question of abandonment, and on this question also the Court found in favor of plaintiff, on a better case for plaintiff than was presented in *Keane* v. *Cannovan,* and amply sufficient to prevent us from setting aside the finding on that point. The land was conveyed from time to time for large sums of money— as high as one thousand five hundred dollars—sometimes through sales under execution, and sometimes on sales by the owner. The plaintiff himself paid a large sum of money for the land, and only obtained it after a long correspondence and negotiation with the party claiming to be the owner, in New York. These facts indicate no purpose to abandon. The claim asserted was evidently well known and respected till defendant entered. There is also evidence tending strongly to show that defendant himself recognized the right

of plaintiff's grantors; and that the purchase was made by plaintiff upon an arrangement with defendant, with money borrowed by plaintiff for the express purpose, upon a loan negotiated by defendant himself, and that defendant, in taking possession, acted in bad faith toward plaintiff. There is, it is true, conflicting testimony upon this point, but the finding upon the whole case is for the plaintiff, and we find no sufficient ground for setting aside the findings on the questions litigated, of prior possession and abandonment. An intent to abandon was certainly not affirmatively shown. Unless we are prepared to overthrow the doctrine that abandonment is a question of intention, to be determined by the jury from the evidence, and to overrule the cases cited, the judgment in this case must be affirmed on this point.

Defendant, Rollins, derived title to a part of the land claimed in the complaint from one McKenna, who died some years before the trial. The testimony of plaintiff, Moon, was objected to as incompetent, on the ground that Rollins is the representative of a deceased party. But the Court found in favor of defendant, Rollins, as to the McKenna lot. Conceding Moon to be incompetent to testify, so far as that lot is concerned, since Rollins succeeded *as to that lot,* he could not have been injured by Moon's testimony with respect to it. It is not pretended that Rollins is the representative of a deceased party, with respect to the lots recovered by Moon, and as to those he was a competent witness.

We think there is no error on the question of damages.

The judgment in the case of *Sindle* v. *McKenna,* and the proceeding under it, putting the plaintiff in possession, were relevant on the question of possession, to show the fact that he was put in possession.

Judgment affirmed.

Mr. Justice Sprague expressed no opinion.