[L. A. No. 2715. In Bank.—September 20, 1912.]

HOME REAL ESTATE COMPANY (a Corporation), et al., Respondents, v. THE LOS ANGELES PACIFIC COMPANY (a Corporation), Defendant and Appellant, and TITLE INSURANCE AND TRUST COMPANY (a Corporation), Defendant.

Railroad—Right of Way—Abandonment—Ejectment for Possession.—Where there has been an abandonment of a railroad right of way consisting of an easement only, the owner of the fee may maintain ejectment to recover possession.

Id.—Nonuser—Intent to Abandon—Evidence of Intent.—Mere nonuser, not accompanied by an intent to abandon, will not divest the right of the railroad company to the easement.  A long continued nonuser is, however, some evidence of an intent to abandon.

Id.—Intent to Abandon Question of Fact—Conflict of Evidence.—The existence of the intent to abandon is a question of fact, to be determined by the trial court or jury from a consideration of the conduct of the railroad and the surrounding circumstances, and where the evidence in connection therewith is such that a finding either way might reasonably be made, the conclusion of the trial court must be upheld on appeal.

ID.—Entry and Use Under License for Special Purpose—Revocability by Owner of Fee.—The entry into possession of land for certain purposes under license from the owner, together with the designed use of the land, confers a right on the licensee which is not revocable at the mere will of the owner of the fee. The nature and extent of the right acquired must, however, be measured by the terms of the license under which entry was made.

ID.—Abandonment of Railroad Right of Way—Evidence—Non-user—Establishment of Parallel Line.—The abandonment of a right of way for a railroad is sufficiently established by evidence that the licensee, who had entered upon the right of way under a license to construct and operate a steam railroad over the same to and from a specified terminal point, for the purpose of carrying passengers and otherwise doing a general railroad business, had failed for a period of several years to carry any passengers over its road or to maintain any service with such terminal point, and had permitted a part of its track to become so covered with debris as to be useless, had run no cars over the other part except intermittently for the transportation of certain kinds of freight, but not for the accommodation of the public, and had constructed another parallel line which it used for the transportation of passengers to and from such terminal point.

ID.—Ejectment Against Public Service Corporation.—The rule that a private individual cannot maintain an action of ejectment against a corporation which has entered upon his land, where the effect of a recovery would be to stop a public service which has grown up in consequence of plaintiff's acquiescence in the entry and use, has no application where the corporation has abandoned the use of the property for a public service.

ID.—Parties—Occasional Shipper of Freight not Necessary Party.—In an action by the owner in fee of the land embraced in the right of way to recover its possession after its alleged abandonment by the railroad, persons who were occasional shippers of freight over the portion of the road so intermittently used are not necessary parties.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. P. James, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, Gurney E. Newlin, Roy V. Reppy, and Allen W. Ashburn, Jr., for Appellant.

Robert C. Fairall, *Amicus Curiae,* also for Appellant.

Bernard Potter, and W. H. Fuller, for Respondents.

SLOSS, J.—This action was brought to recover possession of a strip of land thirty feet in width, located in the county of Los Angeles. That plaintiffs are the beneficial owners of a fee in the property is not disputed. The claim of the appellant, The Los Angeles Pacific Company, is that it holds and is entitled to retain possession of the strip as a right of way for railroad purposes.

It appears that on March 9, 1887, a number of persons (including Emanuel Peltier, the then owner of the premises, and the predecessor in interest of the plaintiffs), as parties of the first part, entered into an agreement with James McLaughlin, appellant's predecessor, as party of the second part. The agreement recites that McLaughlin is the owner of a steam dummy railroad line running from a point in the city of Los Angeles, and that the other parties desire to have the line extended westerly beyond the city limits to the territory in which their lands are located. The parties of the first part, besides agreeing to make certain payments and conveyances to McLaughlin by way of subsidy, agree that McLaughlin "shall have the right to locate the route of his road as hereinafter stated, along, through, over and upon the lands of the parties of the first part," and that upon such locating, they will convey to him a right of way for said railroad not exceeding thirty feet in width. McLaughlin agrees that he will "extend, construct, operate and maintain his steam dummy line of railroad from the terminus of his present franchise at the westerly corporate boundary of the city of Los Angeles," over a described route to and through the lands of Peltier and others. It is alleged in the complaint that McLaughlin constructed the extension about January 1, 1888, and operated his steam dummy line thereover for about five years. Thereafter, it is alleged, he ceased operating or running cars over the railroad "and abandoned the said road and the operation thereof." In 1905 the Los Angeles Pacific Company, claiming to have succeeded to McLaughlin's rights, constructed a roadbed over the property in controversy, laid ties and rails thereon, erected poles, and threatens to operate by electricity street cars over said road. It is alleged that since the abandonment of the road by McLaughlin, there have been no acts done toward operating a street railway over the said road, except that cars have been run over plaintiffs' prop-

erty occasionally for the purpose of hauling lumber or oil, but the same have not been run to accommodate the public or to carry passengers. By amendments to the complaint the plaintiffs sought to set up a further right of recovery, based upon the failure of McLaughlin and his successors, for a period exceeding six months, to operate the road as required by the statute of 1880 (Stats. 1880, p. 43), now incorporated into section 468 of the Civil Code.

The defendant, The Los Angeles Pacific Company, denied the alleged abandonment as well as the failure to operate as required by the statute.

The court found in favor of plaintiffs upon both of the grounds asserted by them. Finding XII declares that during the year 1897 McLaughlin and his successors in interest ceased to run cars over said line, but abandoned the said railroad and the operation thereof; that since the latter part of the year 1899 the track has been in many places covered with earth and debris, rendering it impossible to operate cars thereover; that since 1897, neither McLaughlin nor the appellant has run cars over plaintiffs' property, except intermittently during a portion of the time for the purpose of transporting oil to the town of Sherman (but not to or from the city of Los Angeles) and not for the purpose of accommodating the public. There are further findings supporting the allegations of the amendments to the complaint. Judgment went for plaintiffs, and the Los Angeles Pacific Company appeals from such judgment, as well as from an order denying its motion for a new trial.

The foregoing findings are attacked as unsupported by the evidence.

In their briefs the parties devote much attention to the claim based on the terms of the statute of 1880. The appellant argues that that act does not provide for a self-executing forfeiture to be asserted in an action between private parties, and that, in any event, there can be no forfeiture until the railroad commission has decided, under the power conferred by section 3 of the act, the existence or nonexistence of the conditions excusing a failure to operate. These are interesting questions, but we find it unnecessary to pass upon them here, for the reason that, irrespective of the statute, the judgment is fully supported by finding XII, above referred to.

The appellant concedes that "where there has been an abandonment of a railroad right of way consisting of an easement only, the owner of the fee may maintain ejectment to recover possession." The court has found such abandonment, and the only question is whether this finding has the support of adequate evidence.

We do not doubt that it has such support. Numerous witnesses testified that the active operation of the road stopped about 1897, and that it was never thereafter run over that portion of the track connecting with the city of Los Angeles. The hauling of oil cars continued for only two or three years, and even then was intermittent. The later carrying of lumber was of like character. During all this time no passengers were carried, and there was evidence that after the appellant installed its electric system, passengers were not taken upon its cars. At no time was any service maintained over the line in question between the lands of the parties to the agreement with McLaughlin and the city of Los Angeles. The finding that a part of the track had become covered with debris, so that it could not be used, was also based on sufficient testimony

It is no doubt true, as claimed by appellant, that mere nonuser, not accompanied by an intent to abandon, will not divest the right of the railroad company to the easement. (33 Cyc. 222; *Roby* v. *New York etc. R. R. Co.,* 142 N. Y. 176, [36 N. E. 1053]; *Townsend* v. *Michigan Cent. R. Co.,* 101 Fed. 757, [42 C. C. A. 570].) But in this class of cases as in others, the intention with which an act is done is a question of fact, to be determined by the trial court or jury from a consideration of the conduct of the party and the surrounding circumstances. Where the evidence is such that a finding either way might reasonably be made, the conclusion of the trial court must be upheld under the familiar rule protecting from review on appeal findings based on conflicting evidence. And while nonuser alone does not extinguish the easement, a long-continued nonuser is some evidence of an intent to abandon. (*Louisville Trust Co.* v. *City of Cincinnati,* 76 Fed. 296, [22 C. C. A. 334]; *Townsend* v. *Michigan Cent. R. Co.,* 101 Fed. 757, [42 C. C. A. 570].)

But here we have more than a mere nonuser. The agreement under which McLaughlin and his successors claimed

shows, by its recitals, that the main purpose of the parties of the first part was to secure a rail connection with the city of Los Angeles. No conveyance of a right of way, as contemplated by the agreement, was ever made by the parties of the first part to McLaughlin. The appellant is not, therefore, the owner of an easement conveyed by deed, but must rest upon its right as one who went into possession of land for certain purposes under license from the owner. Such entry, together with the designed use of the land, is no doubt sufficient to confer a right which is not revocable at the mere will of the owner of the fee. (*Southern Cal. Ry. Co.* v. *Slauson,* 138 Cal. 342, [94 Am. St. Rep. 58, 71 Pac. 352].) But the nature and extent of the right acquired must be measured by the terms of the license under which entry was made. In this case the license is embodied in the agreement between the landowners and McLaughlin. The finding of the court is that by the agreement, McLaughlin was given the right and privilege to locate, construct, and operate a steam dummy railroad over the strip in controversy ''for the purpose of carrying passengers over said road and across said thirty foot strip to and from the city of Los Angeles, and otherwise to do a general railroad business over the same.'' The right of McLaughlin and his successors to do a ''general railroad business'' is, of course, to be read as meaning the railroad business of a common carrier, i. e., the carriage of passengers or freight for the public generally. The only business which was ever done after 1897, i. e., the carriage, intermittently, of oil and lumber, was not ''for the purpose of accommodating the public,'' as the court finds. This finding is supported by the testimony of appellant's own witnesses, one of whom testified that the oil was being hauled to Sherman ''for the Los Angeles Pacific Company itself''; another, that ''the road was not operated for the purpose of accommodating the public or carrying passengers after 1900.'' As to this element of appellant's right, therefore, the record shows nonuse of the easement. But with respect to the other and the main purpose of the easement, that is, the transportation of passengers to and from Los Angeles, it shows much more. It shows that McLaughlin's successors permitted a part of the track between plaintiffs' lands and the city to get into such condition that operation over it was impossible. Furthermore, there is testimony that the

line in question was paralleled by another line of the Los Angeles Pacific Company, and that the latter was used for transporting passengers to and from Los Angeles. The superintendent of appellant's lines testified that "after 1900, as there were no passengers to travel on it, (the McLaughlin line) . . . we quit." We think this testimony, together with the other facts in evidence, fully warranted the trial court in drawing the inference that the cessation of operation of the road had been accompanied with the intent to permanently abandon the use of the strip for the purpose of a railroad. By allowing a part of the track to become impassable, and constructing a parallel road over which it carried all traffic to and from Los Angeles, the Los Angeles Pacific Company furnished evidence sufficient to satisfy a trial court that it did not intend to again use the road for that traffic. And, as we have seen, there was no other use which was within the purposes for which the right of way had been acquired.

The appellant makes the point that a private individual cannot maintain an action of ejectment against a corporation which has entered upon his land, where the effect of a recovery would be to stop a public service which has grown up in consequence of plaintiff's acquiescence in the entry and use. (*Gurnsey* v. *Northern Cal. Power Co.,* 160 Cal. 699, [36 L. R. A. (N. S.) 185, 117 Pac. 906].) But the rule relied on has, obviously, no application here, where the findings are that the appellant has not been, and is not, using the line for a public service.

We see no merit in the contention that the action cannot be maintained because the owners of the lumber yard mentioned in the testimony are not joined as parties. They, and others who may derive benefit from the existence of the railroad, are, it is claimed, entitled to be heard in opposition to any judgment which will prevent the operation of the road. We do not think the interest of such persons is so direct as to require them to be made parties. The sole matter presented for adjudication by the pleadings was the right, as between the plaintiffs and the appellant, to the possession of the strip of land in controversy. No interest in this land or right to its possession was asserted by the owners of the lumber-yard or by any one other than the parties to the action. If the railroad company occupied such a relation to the public in-

terest as to make it improper for the court to grant the remedy of ejectment, this objection could properly be, as it in fact was, raised by the company itself. But, as we have seen, the facts were not such as to support the objection. To say that every member of the public who may desire or require the service of a railroad company must be joined in an action of this character would virtually abrogate the rule that where a right of way has been given, ejectment may be maintained by the owner of the land upon abandonment of the easement.

In the view which we have taken, the other questions discussed by counsel are of no importance.

The judgment and the order denying a new trial are affirmed.

Shaw, J., Angellotti, J., Melvin, J., and Henshaw, J., concurred.

Rehearing denied.