[L. A. No. 3556.   In Bank.—June 7, 1916.]

# THE PEOPLE, Respondent, v. SOUTHERN PACIFIC COMPANY et al., Appellants.

RAILROADS—RIGHTS OF WAY—GRANT BY STATE—TIDE AND SUBMERGED LANDS—SECTION 474, CIVIL CODE.—The phrase "swamp, overflowed, or other public lands of the state," in section 474 of the Civil Code, must be construed to include tide-lands and submerged lands.

ID.—COMPLETION OF RAILROAD—CONSTRUCTION OF SECTIONS 291 AND 468, CIVIL CODE.—Section 468 of the Civil Code, providing that every railroad corporation must, within two years after filing its original articles of incorporation, begin the construction of its road, and must every year thereafter complete and put in full operation at least five miles of its road, until the same is fully completed, and upon its failure to do so, for the period of one year, its right to extend its road beyond the point then completed is forfeited, does not apply to the construction of tracks over lands subsequently acquired at one terminus for the purpose of increasing its facilities and capacity to accommodate the traffic to be handled there.

ID.—PERMITS TO USE PUBLIC LAND FOR EXTENSIONS OF COMPLETED ROAD—TERMINAL FACILITIES.—Spur-tracks and extensions of a railroad at its terminus on a harbor merely for the purpose of affording space for enlarging the terminal facilities at the harbor, from time to time, as demanded by the volume of commerce, are not "branch lines" within the meaning of section 468 of the Civil Code or within the usual meaning of that term.

ID.—DEFENSES—PERMITS FROM STATE—LEASE OF LAND FROM CITY—ERRONEOUS JUDGMENT.—In such a case, where the defendants pleaded in defense, not only the permit issued by the surveyor-general, but a lease for fifty years from the city of San Pedro to a part of the land which they had acquired the rights in, a judgment declaring that the title of the defendants to this parcel is reinvested in the state of California "free of any claim or title of the defendants" is erroneous in so far as it declares that it is free from any claim held by defendants by virtue of the lease, even though it be conceded that there has been a forfeiture of the rights under the aforesaid permit from the state, as they would still have the right to continue in possession under the lease.

ID.—GRANT BY STATE—CONSTRUCTION OF SECTION 474, CIVIL CODE.—The grant from the state made by section 474 of the Civil Code is a direct grant to each company accepting it. It is general and unlocated, but when a railroad corporation selects the land it desires,

files its plat thereof, and its selection is recorded and approved by the surveyor-general, and his permit to use the same is duly issued to the corporation, the grant becomes defined and complete, and is as effective to convey the right as it would have been if made by legislative act or by a duly authorized patent describing the land with precision.

Id.—Issuance of Permit—Grant of Easement—Rule to Determine Forfeiture.—The permit provided for by section 478 of the Civil Code, in connection with the statutory grant provided by section 474 of said code, constitutes the recipients grantees of an easement or franchise over the land described for use of their railroad and for all necessary adjuncts thereof, and the rules for determining whether or not the right granted has been forfeited by breach of condition subsequent are consequently the same as those which apply to any direct grant of a franchise or lease to use land for a public purpose.

Id.—Forfeiture—Nonuser—Insufficient to Constitute.—In such a case, where the evidence does not show an intention on the part of the defendants to abandon their rights, but, on the contrary, shows an intention not to abandon them, their rights cannot be forfeited by mere nonuser, as an easement acquired by grant cannot be lost by nonuser alone, but must be accompanied with an intention, expressed or implied, of abandonment.

Id.—Extinguishment of Servitude—Construction of Section 811, Civil Code.—The fourth clause of section 811 of the Civil Code, declaring that a servitude which has been acquired by enjoyment is extinguished by disuse thereof by the owner of the servitude for the period prescribed for acquiring title by enjoyment, is not applicable in such a case, as such franchise was acquired by grant and not by enjoyment.

Id.—Evidence of Nonabandonment—Inclusion of Unused Rights of Way in Tax Statements.—The fact that the defendant railroads included certain unused portions of the strip embraced within the surveyor-general's permit in their annual tax statements, describing them as parts of their right of way, as provided in section 3664 of the Political Code, is positive evidence of the intention to retain these unused rights of way and not to abandon them.

APPEAL from a judgment of the Superior Court of Los Angeles County, and from an order denying a new trial. Walter Bordwell, Judge.

The facts are stated in the opinion of the court.

J. W. McKinley, Frank Karr, W. R. Millar, and E. J. Foulds, for Appellants.

U. S. Webb, Attorney-General, A. L. Stephens, City Attorney of Los Angeles, A. P. Fleming, L. R. Hewitt, and Anderson & Anderson, for Respondent.

SHAW, J.—The defendants appeal from the judgment and from an order denying their motion for new trial.

By sections 474 and 475 of the Civil Code the state has made a grant running to every railroad corporation of a right of way for the location, construction, and maintenance of its railroad, and every necessary adjunct thereof, over any "swamp, overflowed, or other public lands of the state not otherwise disposed of or in use," not exceeding 200 feet in width, and "not within three miles of any incorporated town or city." In view of the language of subdivision 5 of section 465, empowering every railroad corporation to construct its road over any roadstead or bay, the grant in section 474 must be construed to include tide and submerged lands by the term "public lands." By section 478 provision is made for the selection by any railroad of the location of such right of way, for the approval thereof by the surveyor-general, and for the issuance by him to the railroad company of a permit to use the land selected for the uses claimed or desired. Section 477 provides that if, after selecting such right of way and receiving a permit therefor, a railroad corporation shall abandon the use of the lands selected, the same shall revert to the state free from all such uses.

On June 4, 1881, the Southern Pacific Railroad Company selected lands to use for a right of way and for the construction of yards, sidetracks, depot buildings, and other adjuncts to its railroad across certain tide-lands, in the Bay of San Pedro, and the surveyor-general issued to it a permit to use said lands for that purpose. Afterward, in 1887, it selected two strips for the extension of said right of way; one, curving toward the east, designated as a spur, extending 2,260 feet along the harbor front line of the inner harbor of the bay; the other running southerly to the crossing of San Pedro Street and thence curving westerly near the shore line of the inner harbor, and extending to the United States government reservation, said extension being nearly 20,000 feet long. On April 7, 1887, the surveyor-general approved this selec-

tion and issued a permit empowering the Southern Pacific Railroad Company to take and use said strips for extensions of its line thereon, and for yards, sidetracks, spurtracks, depot buildings, warehouses, wharves, and other adjuncts to facilitate the transportation of freight and passengers to and from the bay. At that time the city of San Pedro had not become incorporated and the town of Wilmington had been disincorporated by the act of March 12, 1887 (Stats. 1887, p. 108). Consequently the land selected was not within three miles of any incorporated town or city. Prior to the year 1888 the said company extended its track from its previous terminus on the bay, constructing the westerly branch of the extension to a point where the east line of San Pedro Street in the city of San Pedro, now Los Angeles, crosses said strip, and the easterly spur extension to a point 1,000 feet from the extremity thereof. It has ever since the construction thereof continued to operate its railroad over these tracks. It has never extended its tracks farther along said strips, or either of them. The two defendants operate together, one under a lease from the other.

The action was begun by the state to enjoin the defendants from laying or maintaining any railroad or other improvements upon the portions of the two strips upon which, as above stated, it has not constructed any railroad, and for judgment that all rights in said portions of said strips of land have become lost by abandonment, and forfeited to the state of California. The defendants claim under the permits from the surveyor-general above mentioned as evidence of the specific location of the general grant made by the state by said sections of the Civil Code.

Section 468 of the Civil Code provides that "every railroad corporation must, within two years after filing its original articles of incorporation, begin the construction of its road, and must every year thereafter complete and put in full operation at least five miles of its road, until the same is fully completed; and upon its failure so to do, for the period of one year, its right to extend its road beyond the point then completed is forfeited." Respondent claims that the unused ends of these extensions are forfeited by reason of this provision. We do not think section 468 applies to this case.

It refers to the original articles of incorporation, which are provided for in section 291. Section 291 requires the original articles of incorporation of any railroad company to state the kind of road to be constructed and "the place from and to which it is intended to be run, and all the intermediate branches." The purpose of section 468 is to secure the performance of the promise implied from this part of the articles, that is, the due completion and full operation of the road from one end to the other and also of the intermediate branches. It has no logical relation to the construction of tracks over lands subsequently acquired at one terminus for the purposes of increasing its facilities and capacity to accommodate the traffic to be handled at that end of the line. The railroad from Los Angeles to San Pedro was completed and a connection with the San Pedro inner harbor and with boats sailing therefrom near the northerly end of the spur extension had been made, and the system was in full operation many years before the issuance of the permit to use the land for these extensions. It is clear from the facts shown that the extensions of track for which this permit was obtained was not for a branch road, or for a new road, in any usual meaning of those terms, but were merely for the purpose of affording space for enlarging the terminal facilities at the harbor from time to time, as demanded by the volume of commerce. The proper time for constructing additional trackage or adjuncts at the terminus of a railroad must depend on the increase of commerce and the needs arising therefrom. The completion of a proposed extension of its road at one end of its line, for reasons of this character, does not come within the object intended to be secured by the forfeiture clause of section 468. (*Arcata* v. *Arcata etc. Co.,* 92 Cal. 646, [28 Pac. 676].) It is not a part of the completion of the road between the termini as described in the original articles of incorporation, to which that section relates.

It also appears that in 1906 Randolph H. Miner obtained a lease for fifty years from the city of San Pedro of a tract of land embracing the second or westerly parcel here in controversy, in consideration whereof he agreed to construct a seawall, docks, and slips along the harbor line as finally fixed by the United States government, with channels leading

therefrom to deep water, and to fill in with earth the space between said wall and the shore. This lease was confirmed on March 23, 1907, by the legislature. (Stats. 1907, p. 987; *Koyer* v. *Miner, ante*, p. 448, [156 Pac. 1023].) In pursuance of this lease the harbor-wall with the improvements contemplated were constructed and the space behind filled in with earth, so that the defendant's westerly strip now lies inland, except at the extreme end, where it intersects the harbor line. Thereafter Miner conveyed to the defendants all his interest in said westerly parcel. This conveyance is pleaded as a defense. The right given to the defendants by the Civil Code and the surveyor-general's permit is a right continuing during the corporate existence of the defendant, Southern Pacific Railroad Company, and perhaps for any lawful extensions of its period of existence. This may carry it beyond the expiration of the fifty-year lease given to Miner. Consequently the grant from Miner is not a complete answer to the cause of action with regard to this parcel. If the right under the surveyor-general's permit is now forfeited, such forfeiture would defeat the right of possession of the defendants to the property under the permit, but it would not defeat its right to continue in possession under the Miner lease. If the judgment had merely declared that the right obtained by the surveyor-general's permit hereinbefore mentioned had been forfeited and had reverted to the state, no error could have been predicated upon the conveyance by Miner to the defendants. In that event, it would not have affected the right of the defendants to occupy and use the land for railroad purposes under their grant from Miner for the period of the lease. But the judgment goes further and declares that the title of the defendants to that parcel has reinvested in the state of California "free of any claim or title of the defendants." In so far as this declares that it is free of any claim held by the defendants by virtue of the grant from Miner, it is erroneous, even if it should be conceded that there has been a forfeiture of the rights under the aforesaid permit from the state.

This brings us to the question whether the use of the lands selected had been abandoned within the meaning of section 477 of the Civil Code, so that the land had reverted to the

state at the time the action was begun, as provided in that section.

The facts bearing upon this question are as follows: In December, 1891, the defendants began the work of extending the railroad over the spur along the harbor front line, by driving piling along the seawall upon which to erect a wharf and railroad track. They had driven the piles for 660 feet southerly from the northerly end of the unoccupied 1,000 feet when they were enjoined from continuing the work by the city of San Pedro in an action against them, and this injunction continued in force until March, 1894. (*San Pedro* v. *Southern Pac. R. Co.*, 101 Cal. 333, [35 Pac. 993].) Thereafter nothing further was done toward the completion or use of the spur extension until January, 1903. At that time they put in a bulkhead along the seawall line and filled in the land behind it. The harbor lines had been changed so as to cut off and include in the channel the extremity of this proposed spur. The bulkhead was completed in August, 1903. Thereafter they used this 1,000 feet of the spur extension until January, 1903. At that time they put in bridge materials and other things needed for the maintenance of their railroad, but no railroad track, wharves, or other structures connected with said railroad have been built thereon. The construction of a wharf on the northerly end thereof was begun in 1904, but it was discontinued because the material provided for that purpose was needed for immediate use to construct a levee on the Colorado River to restrain a flood in that river. Afterward, during the years 1905, 1906, 1907, and 1908, the defendants had plans drawn, estimates made, and other preparatory work done for the building of railroad tracks and wharves on this 1,000 feet and actually did a part of the work, but it was stopped because of the uncertainty of the defendants as to their title to the property. These doubts, we presume, arose out of the public agitation and discussion preceding the initiation, in October, 1908, of the litigation over tide-lands bordering on San Pedro Bay. (See *People* v. *Southern Pac. R. R. Co.*, 166 Cal. 614, [138 Pac. 94].) This action was begun some time in 1909, and the rights here involved were expressly excluded from the judgments in those cases. A part of the

strip was included in some of the tide-land locations in controversy there. There was no evidence of any declaration by the defendants, or any of their officers or agents, indicating that the defendants, or either of them, had abandoned, or ever intended to abandon, the rights they possessed under the grant of the right of way upon this portion of the selection. There is no proof that the needs of commerce during this period were such that the public interest demanded that the railroad should be completed farther along these strips, or that wharves should be built thereon, or that, during this period, the existing or probable immediate future traffic would have justified the cost of building such tracks or wharves, or that any other person or corporation desired, or was willing, to put these lands to any immediate public use. It was stipulated that the construction of the spur is now a proper preparation for the increasing commerce at the port. During the entire period the defendants were actively operating the railroad from San Pedro to Los Angeles, which was an important part of the Southern Pacific system, and there was a very heavy traffic thereon. It is not claimed that they were not at all times abundantly able to lay tracks on these extensions if they had desired so to do. No reason for their failure therein appears, except that until about the time the action was begun there was no immediate necessity therefor growing out of the needs of commerce. With respect to the westerly strip extending over the lands covered by the Miner lease, near the original shore line, it does not appear that any use has been made of that portion thereof lying southerly of the crossing of San Pedro Street, and no acts of control have been exercised by the defendants except the aforesaid transaction following the lease to Miner and the payment of taxes thereon. There is no evidence, however, of any intention by the defendants to abandon this strip except such inferences as may be drawn from the failure to extend the tracks over the same. No person ever disputed the right of the defendants therein, or ever occupied the same adversely. It was stipulated that both of these strips of land have been assessed for taxes by the state to the defendants and that the defendants have paid the taxes thereon.

The grant from the state made by section 474 of the Civil Code is a direct grant to each company accepting it. It is general and unlocated, but when a railroad corporation selects the land it desires, files its plat thereof, and its selection is recorded and approved by the surveyor-general and his permit to use the same is duly issued to the corporation, the grant becomes defined and complete, and is as effective to convey the right as it would have been if made by legislative act or by a duly authorized patent describing the land with precision. This permit, therefore, in connection with the statutory grant, constituted the defendants grantees of an easement or franchise over the land described for use of their railroad and for all necessary adjuncts thereof. The rules for determining whether or not the right granted has been forfeited by breach of condition subsequent are, consequently, the same as those which apply to any direct grant of a franchise or lease to use land for a public purpose.

From the facts above stated it is clear that the finding of the court below that the defendants had abandoned the strips of land in controversy has no support in the evidence except that which it may derive from the fact that there was a nonuse of the 1,000 foot strip for the nine years from 1894 to 1903 and a nonuse of the other branch from 1888 until the beginning of the action. It is the theory of the plaintiff that nonuse of such a franchise for these periods is sufficient evidence of both the fact of abandonment and the intention to abandon. The court below evidently made its finding upon this theory. In this we think it was in error.

The rule upon this subject is thus stated: "As a general rule, in order to constitute an abandonment of an easement in a right of way by a railroad company there must be a nonuser accompanied by unequivocal and decisive acts on the part of the company, clearly showing an intention to abandon. . . . In the absence of a statute, mere nonuser for any length of time will not work an abandonment." (33 Cyc. 222; see, also, 1 Corpus Juris, 8.) Our only statute bearing upon the subject is the fourth clause of section 811 of the Civil Code, declaring that a servitude which has been "acquired by enjoyment" is extinguished by "disuse thereof by the owner of the servitude for the period prescribed for ac-

quiring title by enjoyment." As this franchise was acquired by grant and not by enjoyment, this provision does not apply to it. The rule above stated is fully supported by the decisions in this state and elsewhere. (*Smith* v. *Worn*, 93 Cal. 212, [28 Pac. 944]; *Home R. E. Co.* v. *Los Angeles P. Co.*, 163 Cal. 714, [126 Pac. 972]; *Moon* v. *Rollins*, 36 Cal. 338, [95 Am. Dec. 181]; *Judson* v. *Malloy*, 40 Cal. 309; *Richardson* v. *McNulty*, 24 Cal. 345; *Lawrence* v. *Fulton*, 19 Cal. 683, 690; *Utt* v. *Frey*, 106 Cal. 397, [39 Pac. 807]; *Wood* v. *Etiwanda W. Co.*, 147 Cal. 234, [81 Pac. 512].) In *Smith* v. *Worn* the court says: "An easement acquired by deed is not lost by mere nonuser. It must be accompanied with the express or implied intention of abandonment." In *Moon* v. *Rollins*, in defining abandonment, the court said: "It is a question of intention and has been so held over and over again, and *not* a question of *time*, except so far as the jury are entitled to consider lapse of time in connection with other circumstances of claim, or nonclaim, and acts of ownership and dominion, or a want of such acts, for the purpose of ascertaining the intention." In *Lawrence* v. *Fulton* an instruction which declared "that lapse of time does not constitute an abandonment" was approved, and it was added that, in deciding the question of abandonment, lapse of time was not, to speak with exactness, *the* material element, but only "*a* material element to be considered." There are some cases in which it is said that abandonment by nonuser may be the more readily presumed in the case of the grant of an easement for public use. (*Louisville Trust Co.* v. *Cincinnati*, 76 Fed. 315, [22 C. C. A. 334]; *Henderson* v. *Central Passenger Ry. Co.*, 21 Fed. 368].) But in each of these cases there were other circumstances indicating a positive intent to abandon, and nonuser was not said to be in itself sufficient to show such intent.

In this case there are no other circumstances to show the intent to abandon the property, and there are indications that such was not the intent. Indeed, it is not seriously claimed that there ever was, in fact, such intent. The payment of taxes could not have been regularly made on these strips unless the defendants had included them in their annual statement describing them as parts of their right of way, as pro-

vided in section 3664 of the Political Code. This, it is admitted, was done. This alone is positive evidence of intention to retain these unused rights of way, and not to abandon them. The deal with Miner shows that defendants were diligently guarding the parcels against encroachments by others. The entire course of conduct concerning the spur along the harbor line tends to disprove the purpose to abandon it. We therefore conclude that the finding is contrary to the evidence.

The judgment and order are reversed.

Sloss, J., Henshaw, J., Melvin, J., Lawlor, J., and Angellotti, C. J., concurred.

Rehearing denied.