[Civ. No. 4240.   Fourth Dist.   Sept. 7, 1951.]

H. CLINTON FLANAGAN et al., Respondents, v. SAN MARCOS SILK COMPANY, INC. (a Corporation) et al., Defendants; AMERICAN REAL SILK, INC. (a Corporation) et al., Appellants.

Emil Steck, Jr., for Appellants.

Gray, Cary, Ames & Driscoll and John M. Cranston for Respondents.

GRIFFIN, J.—Plaintiffs and respondents brought this action to quiet title to a parcel of land described as Lots 2 and 5 of Rancho Los Valecitos de San Marcos, located near San Marcos, and it is directed to a claim by these appealing defendants to an easement for the maintenance of a pipe line over a portion of the real property owned by plaintiffs.

Certain of the named defendants in this action filed disclaimers and defaults were entered as to other defendants. These appealing defendants contested the action and will be hereinafter referred to as defendants.

Plaintiffs concede that defendants' predecessor in interest, American Silk Factors, Inc., a corporation (hereinafter referred to as the Silk Company) owned a large parcel of land south of Lots 2 and 5, which lots were at that time owned

by a Mr. and Mrs. Brambley; that by written grant deed, duly recorded in 1927, the Brambleys deeded to the Silk Company a "perpetual easement or right-of-way" for the construction of pipe lines over and across their property which is now owned by plaintiffs. A similar easement was obtained from the Akermans, who owned a parcel of land lying between that owned by the Silk Company and the parcel owned by the Brambleys. The Vista Irrigation District operated a water distributing ditch just north of plaintiffs' property. A pipe line was laid over and across plaintiffs' land, across the Akerman property, and across the Silk Company's property to the silk plant, and was the means by which the Silk Company was to obtain its water, operate its silk mills, and grow mulberry trees. The Silk Company's property was not in the irrigation district but in 1927 it obtained an agreement whereby the district would furnish water to it through their pipe line. During the operation of the plant, from 1927 to 1933, there was delivered to it each year water in excess of 100 cubic feet. Shortly before 1933 the Silk Company became bankrupt. In February of that year the trustee in bankruptcy executed a trustee's deed and bill of sale to one Poulsen, conveying all property owned by the Silk Company, and specifically conveying the Brambley easement involved in this action. Received in evidence (Exhibit 10) is a commissioner's deed, dated November 19, 1933, being the result of a judgment of foreclosure dated October 18, 1932, on the Silk Company's property conveying to one Evans the property and all appurtenances thereunto belonging. By mesne conveyances thereafter a portion of the property originally owned by the Silk Company was transferred to and is now owned by defendant American Real Silk, Inc., subject to certain liens and trust deeds held by the other appealing defendants.

The court specifically found and concluded that "The common predecessor in interest of the defendants sometime during the year 1933 abandoned any interest which such predecessor in interest ever had in the easement in, over and upon a portion of plaintiffs lands," and ordered plaintiffs' title quieted accordingly.

The main question on this appeal is the sufficiency of the evidence to support the finding of abandonment. In this connection the court found that in 1933 the pipe line in question was broken or blocked at its northerly end where it had previously been connected to the supply line of the irri-

gation district, and thereafter no water could or did run through it until 1944; that in 1933 the predecessor in interest of defendants drilled certain wells upon portions of the property now owned by defendants and irrigated their premises; that no water was ever carried through the pipe line here in dispute to any lands of defendants since 1933; that no water has been available for such delivery to defendants or their predecessors in interest since 1933; that this pipe line has been incapable of conducting water by reason of severance thereof; that after plaintiffs acquired their property, they caused the pipe line to be reconnected to the irrigation district system to supply water to their lands; that prior thereto the line was cut off and blocked at the south end of the easement; that in 1946, it was broken at a point on the McCandless property, being a group of lots south of plaintiffs' property and that these owners connected, with defendants' consent, to water from a reservoir pumped from wells on defendants' property and were using that portion of the pipe line as a system wholly separate from the pipe line here involved. (Thereafter McCandless blocked off both ends of the pipe line on their property, dug their own well, and continued to use that portion of the pipe line on their property to carry water to it.) The evidence supports these particular findings and there is very little conflict in the evidence in this respect.

It is defendants' position that they acquired their interest and ownership in the property in 1943, in reliance upon the provisions in the several instruments conveying the easement across plaintiffs' land to them, and in reliance upon the statements of the seller that such easement was still in existence for the benefit of the property of defendants; that they had no knowledge of any purported abandonment at any time, and that they were innocent purchasers for value; that neither defendants nor their predecessors in interest ever ordered the pipe line disconnected or authorized its use by plaintiffs and that since no written notice of abandonment of the easement was ever recorded by defendants or their predecessors in interest, the easement is still in existence.

It is true that plaintiffs purchased their property in April, 1935, and soon thereafter learned about the pipe line and the easement of record across their property. They testified they had no consent of the Silk Company or its successors in interest to connect the pipe line to the irrigation district

ditch but since their property was in the district they applied for and received consent from the district to establish a meter and receive water through those pipes. The evidence further shows that on September 28, 1948, defendant American Real Silk Company wrote plaintiffs' that it had come to its attention that plaintiffs were using the pipe line belonging to that company and located on the easement in question; that since the company had no present use for it, it would be satisfactory for them to continue using it until such time as the defendant company had a need for it. The source of defendants' claimed title thereto was set forth in the letter. On October 1, 1948, plaintiffs replied that they had made some investigation as to the record title and "Presuming your company has the necessary credentials to establish ownership. . . . I would like to purchase" such interests and pipe line as are located on my property covering a lineal distance of 1180 feet. It was then stated that Mrs. Flanagan had a meter connected to the line in 1944, and that ". . . the line was apparently treated as abandoned property." In reply, the defendant company stated that it was negotiating a sale of the property and the contemplated purchaser "may or may not want to use the pipe line and the easement." Further negotiations were to be deferred until negotiations for the sale of the property were concluded. Flanagan testified that since the pipe had been in the ground for over 20 years, it was beginning to spring leaks and "definitely will not last very much longer."

Defendants contend that although the pipe line in dispute was not being used by defendants to carry water, it was being held by the company as a "stand-by" source of supply to supplement the wells drilled on the property. It is its argument that the evidence shows nothing more than nonuse of the easement and pipe line in question since 1932, and that mere "nonuser," without more, is not sufficient evidence of abandonment or intent to abandon, citing such cases as *People* v. *Southern Pac. Co.*, 172 Cal. 692 [158 P. 177]; *Smith* v. *Worn*, 93 Cal. 206 [28 P. 944]; *Parker* v. *Swett*, 40 Cal.App. 68 [180 P. 351]; and 9 Cal.Jur. page 960, section 12. It cites the rule stated in *Smith* v. *Worn, supra*, page 213, that "The acts of the owner of the dominant tenement in case of nonuser, or to prevent him from obtaining an *easement acquired by grant*, must be of a character so decisive and conclusive as to indicate a clear intent to abandon the easement."

As to this general proposition of law plaintiffs do not quar-

rel with defendants but strongly maintain that "nonuser," accompanied by an intention, either express or implied, to abandon the easement is sufficient, citing *Del Giorgio* v. *Powers,* 27 Cal.App.2d 668 [81 P.2d 1006] ; *Glatts* v. *Henson,* 31 Cal.2d 368 [188 P.2d 745] ; 17 American Jurisprudence, page 1026, section 141; and *Moon* v. *Rollins,* 36 Cal. 333 [95 Am.Dec. 181], where it is said:

". . . lapse of time does not of itself constitute an abandonment, but that is only a circumstance for the jury to consider in determining the question whether there was an abandonment; . . . It is a question of *intention,* and has been so held over and over again, and *not* a question of *time,* . . . ."

In *Home Real Estate Co.* v. *Los Angeles Pacific Co.,* 163 Cal. 710 [126 P. 972], the rule is stated that while nonuser alone does not extinguish the easement, a long continued nonuser is some evidence of an intent to abandon, and that an intention with which an act is done is a question of fact to be determined by the trial court from a consideration of the conduct of the parties and the surrounding circumstances, and that where evidence is such that a finding either way might reasonably be made, the conclusion of the trial court must be upheld under the familiar rule protecting from review on appeal findings based on conflicting evidence.

In the instant case there is no question about the discontinuance of the use of the pipe line in question in the year 1932 or 1933, when the Silk Company went bankrupt. It was not subsequently used by it or its successors in interest. The trial court apparently fixed the year 1933 as the one in which the abandonment occurred. Standing alone, this evidence of nonuse may not have been sufficient to support a finding of intent to abandon. (*People* v. *Southern Pac. Co.,* 172 Cal. 692, 700 [158 P. 177].) It is defendants' argument that any evidence of the conduct of the Silk Company and its successors in interest thereafter was inadmissible and should not be considered for any purpose. The authorities cited by defendants do not support this argument. Since abandonment involves intent, evidence of actions after 1932 by the several successors in interest was relevant as bearing on the question. As pointed out by counsel for plaintiffs, suppose a husband left his wife in 1933 and went to another city and did not return. Evidence as to his subsequent actions would be relevant to determine whether he left her in 1933 with the intent to desert her. (*Greer* v. *Greer,* 135 Cal. 121

[67 P. 20].) Therefore, in connection with the fact of nonuser, there is the additional evidence, as exemplified by pictures in evidence, that the pipe line easement had grown over with thick underbrush, the pipe became exposed, and gulches washed from under it. There is some evidence that it needed repair and that it would soon need replacing due to leaks and deterioration. The grant of easement contained a clause that the grantee and its successors were bound to maintain the pipe line upon plaintiffs' property "as free from leaks as possible." ▋ In 17 Am.Jur. 1027, section 142, the rule is stated to be that: "Ordinarily, failure to repair does not constitute an abandonment, but an abandonment may be predicated upon facts showing that the means of enjoyment of an easement have been in a state of disrepair for a long period of time." See also, Thompson on Real Property, volume 2, pages 371-372, section 694, where it is said (p. 372): ". . . One who is bound to keep his easement in repair but fails to do so for an unreasonable length of time may be deemed to have abandoned the easement. Any act on the part of the dominant owner that is inconsistent with his further enjoyment of the right is an abandonment of it."

▋ The facts here show: (1) Nonuser by defendants and their successors in interest for over 16 years; (2) affirmative acts of these parties in obtaining a new and different source of supply of water by means of digging wells in the year 1934; (3) the sale and grant by defendants' predecessors in interest to a stranger in 1933 of a portion of the Silk Company's original property over which the pipe line passed and lying between the plant and plaintiffs' property without a special reservation of an easement of right-of-way for this particular pipe line contained in the grant; (4) permitting the blocking of a portion of the pipe line for the private use of the McCandless property; (5) the apparent adverse use of a blocked portion of the easement pipe line by plaintiffs since 1944; and (6) failure to maintain the easement line in question free from leaks.

Had the trial court found that there had been no abandonment the finding might be supported by the evidence produced. Defendants bring this case before us upon a finding which is against them as to both the question of abandonment and intent. We cannot say that the finding of the trial court lacks evidentiary support.

It is next argued in defendants' reply brief, for the first time, that the court erred in striking certain evidence offered by defendants after the trial court granted a limited new trial. The record is confusing in this respect. The trial judge signed written findings in which he found that there was an abandonment of the easement, and entered judgment accordingly. Thereafter, on motion, the judgment against these appealing defendants was vacated and a new trial was granted on certain issues only, and a new trial was denied on the remaining issues. The issues to be considered on the new trial were designated as (1) ''Was the easement referred to . . . at any time appurtenant to the lands which the said defendants . . . now own or in which they have an interest . . .''; and (2) ''Were said defendants (appellants herein) . . . bona fide purchasers of the lands which they now own or in which they have interests. . . .''

Thereafter defendants produced several witnesses who, over objections, testified generally as to the location of the several pipe lines over the different properties and their past and present use as well as the past and present use of the properties. The attorney for the defendants was examined. He testified that in 1943 he learned of the wells that were drilled on the plant property in 1934 and 1935; that the water therefrom was used for purposes of irrigating the mulberry trees and several acres of tomatoes; that he also learned, at that time, about the easement across the plaintiffs' land leading to the Vista Irrigation District flume; that he informed the appealing defendants, the prospective purchasers of the plant, at that time, about what he had learned regarding the easement and the type of pipe installations on the property. He testified that he had no knowledge of any abandonment of the easement in question. He further testified that for the past two years he knew that plaintiffs were using the portion of the pipe crossing their property but both these defendants and their successors in interest followed the policy for some years of consenting to the use of these pipes by the adjoining property owners, subject to their ultimate right to use them when they needed them; that these defendants thought they had some right to purchase stock in the Escondido Mutual Water Company and that thereby they might obtain some water from the irrigation district, in the future, if possible. This testimony was admitted subject to a motion to strike. In ruling upon the motion the court stated that it

found that the easement had been abandoned before these appealing defendants became interested in the land, and that they bought the land without the easement and accordingly made an oral order as follows: "... testimony as to the physical pipes on the ground prior to the defendants' purchase is admitted but the testimony as to what the defendants thought or believed at the time they purchased is excluded. ... If this easement had been abandoned, and I have already found that it was abandoned before these defendants became interested in this land, the logical result is that they bought the land that they bought without the easement."

It is now claimed that if plaintiffs were allowed to show all the circumstances, up to the time of trial, indicating the intent of the several owners of the mill property as to abandonment, defendants should likewise have been afforded the opportunity to show what their intentions were when the property was purchased by these appealing defendants. It is difficult, from the order, to determine just what portion of the testimony was stricken. Under the state of the record we cannot say that the question as to whether defendants were "bona fide purchasers of the land" was not fully considered by the trial court at this hearing or in the former trial. The question as to what defendants "thought or believed" may have been subject to objection. The claimed fact that they had no knowledge of any abandonment is probably still in the record and would be weighed against the evidence produced by plaintiffs. In the letter dated September 28th, directed to plaintiffs, above referred to, the defendants specifically set forth their claim and apparently disavowed any knowledge of any abandonment of the easement. This letter was received in evidence on the first hearing. Any further evidence on this subject would have been but cumulative, and no prejudicial error resulted in striking it from the record. At any rate, the trial court's judgment was predicated upon acts which were performed by the predecessors in interest of these defendants which in and of themselves sufficiently show that there had been an abandonment prior to the time these appealing defendants acquired the property. After finding that in 1927 the easement then obtained was, at that time, intended to benefit the lands now owned by defendants as dominant tenants and that it was then appurtenant to the lands, it also found that it was extinguished by abandonment, as indicated. This finding has evidentiary support. No reversible error appears.

In the argument of counsel for defendants before this court he raises some question as to whether the easement actually crossed some of the lands indicated on a map, received in evidence and used by the trial court in its findings. Since the trial court predicated its findings upon the facts produced at the trial this question cannot be raised for the first time in argument on appeal. (*Lotts* v. *Board of Park Commrs.*, 13 Cal.App.2d 625 [57 P.2d 215].)

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.