[Civ. No. 4283. First Appellate District, Division One.—December 1, 1922.]

OCEAN SHORE RAILROAD COMPANY (a Corporation), Respondent, v. SPRING VALLEY WATER COMPANY (a Corporation), Appellant.

[1] RAILROADS—PURCHASE OF RIGHT OF WAY—ABANDONMENT—EVIDENCE—FINDING.—In this action to recover a sum of money paid for a railway right of way over defendant's property, which right of way had never been designated by defendant's engineer as provided by the resolution of the directors of defendant authorizing the grant, and which right of way defendant refused to convey to plaintiff upon request, the evidence was sufficient to justify the finding of the trial court that the right of way was never abandoned.

[2] ID.—BURDEN OF PROCEEDING—LACHES—STATUTE OF LIMITATIONS.—The receipt for the purchase price of the right of way and the resolution of the board of directors authorizing same having placed the burden of proceeding in the execution of the agreement upon defendant, it could not be said that plaintiff was guilty of laches because of a delay of nine years in demanding performance; and plaintiff's cause of action to recover the purchase price paid, following the refusal of defendant to execute and deliver a grant of the right of way, was not barred by the statute of limitations.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. Frank H. Dunne, Judge. Affirmed.

The facts are stated in the opinion of the court.

H. S. Young for Appellant.

Corbet & Selby for Respondent.

ST. SURE, J., *pro tem.*—This is an appeal from a judgment in favor of the plaintiff for $50,993, consisting of

1. Circumstances establishing abandonment of railroad right of way, note, 11 Ann. Cas. 769.

Right of reversion on abandonment of road deeded to railroad company, note, 1 L. R. A. (N. S.) 806.

$35,000, with interest at the rate of seven per cent per annum from March 11, 1914, to date of judgment.

On the fourteenth day of October, 1905, the Ocean Shore Railway Company paid to the defendant the sum of thirty-five thousand dollars ($35,000) for a grant of a right of way across certain property of the defendant. The agreement between the parties is evidenced by a receipt for the purchase price, which reads as follows:

"San Francisco, October 14, 1905.

"Received from Ocean Shore Railway Company, the sum of thirty-five thousand dollars ($35,000.00) October 14, 1905, in full compensation for the right-of-way across and upon the east and north boundaries of Rancho Laguna de la Merced, in accordance with the arrangements made by the board of trustees of the Spring Valley Water Company, at the meeting held in the City of San Francisco, on October 12th, 1905, as follows:

22.50 acres at $2,000.00 per acre...........$45,000.00
Less amount allowed in reduction of the above.
    charge .......................... .... 10,000.00

Balance ....................$35,000.00
"Spring Valley Water Company,
"By Pelham W. Ames,
"Secretary."

and a resolution of the Spring Valley Water Company, passed by the board of directors at a meeting held November 23, 1905, as follows:

"Resolved that this corporation will grant a surface easement for a right of way sixty (60) feet wide, to the Ocean Shore Railway Company for its line of railway and solely for railway purposes, over the Lake Merced Rancho in the City and County of San Francisco, State of California, and in a location near the easterly and northerly sides of said Rancho, but such surface right-of-way shall be south of Ocean Avenue, and shall be, as to exact location and details of locations and conditions on which the grant shall be made (which conditions shall be precedent, present and subsequent) subject to the directions and approval of the chief engineer of this corporation on his return before any grant is made in the premises."

Subsequently on account of the fire of 1906 the Railway Company encountered financial difficulties and did not urge the completion of the contract at the time it was originally contemplated the road would be built.

On June 10, 1909. in reply to a letter from the Water Company making inquiry of the Railway Company regarding various transactions between the two companies, the then president of the Railway Company, referring to the right of way which forms the basis for this action, said: "The other right of way can wait until we are ready to build through the easterly and northerly ends of your property."

No objection is alleged to have been made by the Water Company to this proposal.

Subsequently the Railway Company went into the hands of a receiver and later was sold, together with "all real property, rights of way . . . and also the Richmond Branch of Ocean Shore Railway Company," to the Ocean Shore Rail*road* Company, which was incorporated October 9, 1911.

While in the hands of the receiver an attempt was made to secure a renewal of the Richmond branch franchise in connection with which it was originally contemplated to use this right of way, but this renewal was refused by the board of supervisors.

No further steps are shown to have been taken by either the plaintiff or defendant until January 2, 1914, when the president of the plaintiff company, which had succeeded to the interests of the original Railway Company, requested the president of the Water Company to mail him a "copy of the minutes of the Board of Trustees of the Spring Valley Water Company in reference to this transaction at their meeting held October 12, 1905."

In reply thereto the vice-president and manager of the Water Company forwarded to the Railroad Company a letter under date of February 20, 1914, in which he reviewed the history of the entire transaction, referred to the resolution of November 23, 1905, and after setting it forth in detail added: "These conditions have never been complied with." He also quoted from the letter of June 10, 1909, in which the Railroad Company had stated that this right of way could wait and added, "This refers to the proposed Richmond branch," and then recounted the history of the

expiration and refusal, by the board of supervisors, to grant a renewal of the franchise for this branch.

Subsequently and on March 2, 1914, the Railroad Company requested the Water Company to execute and deliver the grant, and on March 11, 1914, the Water Company refused the request with the assertion that the Railway Company had forfeited all rights in connection with the right of way.

On September 12, 1914, plaintiff sued to recover the purchase money paid by its predecessor. The action was tried by the court without a jury and judgment was given to the plaintiff as prayed.

From this judgment the defendant appealed and urged as grounds for reversal that:

I.   The purchased right of way was abandoned by the Ocean Shore Railway Company and by its plaintiff successor.

II.   The remedy sought by plaintiff's complaint is barred by the statute of limitations.

[1]   With regard to the first contention the trial court found "that the right of way acquired by Ocean Shore Railway Company on or about October 14, 1905, was never abandoned by Ocean Shore Railway Company, or its successors in interest, or by this plaintiff or at all." There is sufficient evidence to sustain this finding. The resolution of the board of directors of the Water Company required its own engineer to specify the conditions under which the grant should be made and this he failed to do when requested and there is no evidence that he ever offered to carry out the terms of the agreement. That there was no intention to abandon was shown by the letter of June 10, 1909, to which the Water Company acquiesced and by the fact that the new company gave in its articles of incorporation, as one of its objects, the building of the Richmond branch and as late as 1912 provided for a bond issue for this purpose.

The refusal to renew the franchise in 1910 did not make the building of the road "impossible" as appellant contends. A subsequent board of supervisors might have taken a more liberal view than did the one in office in 1910 and it is possible that the Railroad Company, which at the time demand was made for the execution of the grant (March, 1914), was a going concern, might have then contemplated some trans-

fer, or other arrangement, with the then existing railway lines in the vicinity.

Before the right of way could have been abandoned it should first have been designated by the Water Company's engineer as provided by the resolution of November 23, 1905. The cases cited by appellant in support of the abandonment theory relate to rights of way in which the grantors had completely performed and which had been subsequently abandoned by the grantees. *Home Real Estate Co.* v. *Los Angeles Pacific Co.,* 163 Cal. 710 [126 Pac. 972], cited by appellants in support of the contention that respondent had abandoned, merely holds that where there has been an abandonment of a railroad right of way consisting of an easement only, the owner of the fee may maintain ejectment to recover possession. That is not the case here—the grant had never been completed and therefore it is manifest that ejectment could not lie.

[2] For the second ground for appeal the appellant relies chiefly upon the case of *Thomas* v. *Pacific Beach Co.,* 115 Cal. 136 [46 Pac. 899], but we are of the opinion that the instant case is materially different from this case in that the cited case was based upon a carefully drawn contract which, among other things, provided that the grantee must make demand for the execution of the deed. As will be noted there is no such provision in the two documents which constitute the contract in the instant case. In the Thomas case (at page 142) Mr. Justice Van Fleet, speaking for the court, says: "Where a party's right to sue depends for its perfection solely upon the necessity of a demand by him to put his adversary in default, he cannot indefinitely and unnecessarily extend the bar of the statute by deferring such demand, but he must make it within a reasonable time." We are of the opinion that a fair interpretation of the receipt and resolution constituting the agreement in this case, coupled with the letter of June 10, 1909, placed the burden of proceeding in the execution of the agreement upon the defendant.

In *Meherin* v. *San Francisco Produce Exchange,* 117 Cal. 215 [48 Pac. 1074], also cited by the appellant, the court, quoting an older case, says: "What is to be considered a reasonable time for this purpose does not appear to be settled by a precise rule. It must depend on circumstances.

If no cause for delay be shown it would seem reasonable to require the demand to be made within the time limited by the statute for bringing the action.'' Under the circumstances in this case, it cannot be said that respondent was guilty of laches in making demand. Certainly the prolonged financial disturbance, due to the great fire, furnishes sufficient cause for delay in making demand, if, indeed, demand was essential.

Other cases cited by the appellant, like *Thomas* v. *Pacific Beach Co., supra,* are predicated upon the necessity of demand by the grantee which we have already stated we do not think was required in the instant case.

For the reasons stated the judgment is affirmed.

Tyler, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 29, 1923.

All the Justices concurred.