[L. A. No. 1328. Department One.—June 24, 1905.]

## F. W. WOOD et al., Appellants, v. ETIWANDA WATER COMPANY, Respondent.

WATER-RIGHT—APPROPRIATION—ABANDONMENT—UNION OF ACT AND IN-
   TENT ESSENTIAL—SUPPORT OF FINDING.—In order to constitute the
   abandonment of a water-right secured by appropriation, a union
   of act and intent is essential. *Held,* that the evidence and the
   acts of the defendant support a finding that the defendant never
   abandoned the right to convey and use the water in controversy
   by means of a flume extending across plaintiffs' lands.

ID.—USER—ABANDONMENT OF DILAPIDATED PART OF FLUME—SUBSTITU-
   TION OF IRON PIPE—INJUNCTION—RIGHT TO RESTORE FLUME.—
   Where the defendant had for many years exercised the right to
   convey water in a flume across plaintiffs' lands, the mere aban-
   donment of a dilapidated part of the flume thereon and the sub-
   stitution of an iron pipe in place thereof, is distinct from an
   abandonment of the substantive right to convey and divert the
   water; and where the use of such iron pipe on plaintiffs' lands was
   enjoined, and it appeared that there was no intention to abandon
   the right to restore the flume, if the pipe was not permitted to
   remain, the defendant had the right to remove the pipe and restore
   the flume as originally constructed.

ID.—EVIDENCE—INTENTION OF DEFENDANT—ADVICE OF COUNSEL—CON-
   DITIONAL INTENT TO RESTORE FLUME.—The advice of counsel for the

defendant was admissible for defendant to show its intention in putting in the pipe-line to renew the flume; and other testimony was admissible to show the intention of the defendant not to abandon the flume, but to reconstruct it in case defendant was not allowed to use the pipe upon plaintiffs' lands.

APPEAL from a judgment of the Superior Court of San Bernardino County and from an order denying a new trial. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

Curtis & Curtis, and J. S. Chapman, for Appellants.

Otis & Gregg, and E. R. Annable, for Respondent.

VAN DYKE, J.—On November, 1893, plaintiffs commenced an action in the superior court of San Bernardino County against the Etiwanda Water Company and the California Improvement Company for the purpose of obtaining a perpetual injunction restraining the defendants from maintaining a pipe across the lands of the plaintiffs, and from diverting water from the East Cañon, or Etiwanda Creek, through that pipe, the plaintiffs being the owners as tenants in common of a considerable tract of land, through which said creek flowed. Upon the trial of said action the court found that the stream of water known as East Cañon Creek rises in the mountains above the lands of the plaintiffs, and in its natural course flows down through said lands; that in 1882 the Etiwanda Water Company constructed and used a flume in lieu of an open ditch, which many years before had been used by said defendant's grantors for the diversion of said water, and that said flume was not an original diversion of water, but was a continuation of the diversion before made by the grantors of the defendant; that more than twenty years before the commencement of said action the defendant's grantors appropriated and diverted all the water of said Cañon Creek at a point near where the said creek flows from the cañon, for household and domestic use and irrigation upon lands then owned and possessed by them, and conveyed said water to their said lands for such use, and that ever since, and down to the commencement of the said action, said defendant and its grantors have diverted and used said water

for said purposes, to the extent of one hundred and twenty-five inches, measured under a four-inch pressure, and all the water so diverted had been used for said purposes. During all of said time said defendant and its grantors were, and said defendant, Etiwanda Water Company, now is, the owner of the right so to divert and use the said water to the extent aforesaid. It is also found that defendant, in June, 1892, commenced to lay pipe across the plaintiffs' lands, and that said pipe was substituted for said flume for a portion of the distance across said lands, and was constructed and laid substantially along the course of the old flume, which latter had been wholly disused, except the first portion thereof, and that said pipe-line was so constructed without the consent and against the wishes of the plaintiffs, and was without right; and as a conclusion of law the court found that the plaintiffs were entitled to judgment perpetually restraining the Etiwanda Water Company, defendant, from maintaining or using the pipe-line described in the pleadings, and referred to in said findings; and, as a further conclusion of law, found that the defendant, the Etiwanda Water Company, was entitled to judgment that it is the owner of the right to maintain the dam and flume described in the pleadings and referred to in said findings of fact, and to divert the water of East Cañon Creek to the extent of one hundred and twenty-five inches, measured under a four-inch pressure.

The plaintiffs in that action appealed to this court from the portion of the judgment wherein it was adjudged that the Etiwanda Water Company was the owner of the right to maintain the dam and flume referred to. The defendant, however, acquiesced in the findings and decree in the lower court, and at once proceeded to, and did, remove the pipe, and thereupon restored the flume, as originally constructed, before the appeal was taken on the part of the plaintiffs. In the opinion in this court on the appeal (*Wood* v. *Etiwanda Water Co.*, 122 Cal. 160, [54 Pac. 729], it is said: "The defendant, by its failure to appeal, has acquiesced in the finding and judgment that the pipe-line was constructed without right, and that it be perpetually enjoined from using it, a contingency that might have been anticipated by the defendant and the question made as to its right to construct a flume to take its place. Besides, it may well be questioned whether there is any

finding that will support that part of the judgment appealed from. The court found that the flume had been used from 1882 to 1892, that it was then 'abandoned' and destroyed, except a few feet near the dam, and unless it can be said as a conclusion of law that the flume having once existed, and having been voluntarily destroyed and abandoned, may be rebuilt and the servitude upon plaintiff's lands be recreated or renewed at defendant's will, there would seem to be no basis for the judgment appealed from. . . . The question of defendant's right to reconstruct the flume has been argued in the briefs, but as the question was not raised upon the pleadings, and the judgment in that regard being outside of the issues, and apparently not litigated upon the trial, that part of the judgment appealed from should be reversed, with leave to both parties to amend or supplement the pleadings as they may be advised.''

Instead of following the suggestion of this court in remanding the cause for further proceedings by way of amendments, or supplemental pleadings, the plaintiffs, in June, 1896, commenced another action, for the purpose of enjoining the defendant from constructing any flume or other conduit across the said lands of plaintiffs, or any portion thereof, and from diverting the waters from said stream to conduct the same across the lands of the plaintiffs.

The answer of the defendant, the Etiwanda Water Company, sets forth that in the year 1882 it had constructed an open flume, and by means of such flume and dam had diverted the waters of the creek; that said diversion had existed long prior to 1882, by defendant's grantors and predecessors in interest, and was not a new or original diversion by the defendant; that the flume had been constructed and used in lieu of an open ditch which many years before had been used by defendant's grantors and predecessors, and that the appropriation and use of the waters of the stream by the defendant and its grantors and predecessors in interest extended to and included the entire flow of the stream during the irrigation season of every year, and that the flume, as so constructed, was capable of carrying one hundred and twenty-five inches of water, measured under a four-inch pressure; that all the waters diverted by the defendant were actually used for a beneficial purpose during all said time.

After the commencement of this present action, F. W. Wood, one of the plaintiffs, died, and by order of court Leona Wood, executrix of the will of F. W. Wood, deceased, was substituted in his place, and a supplemental complaint filed. In the answer to the supplemental complaint it is further alleged on behalf of the defendant that the use and substitution of the iron pipe for a portion of said flume was a temporary use and a temporary substitution only, and that the defendant never intended to abandon, and never did abandon, the right to maintain and use the said flume, or any part thereof, as the same had been constructed and maintained and used by it both prior and subsequent to the said temporary use of the iron pipe.

The court finds substantially that the said defendant, after constructing the flume in 1882, as stated, had used the same at all times openly and notoriously and under a claim of right, and adversely to the entire world and continuously to the present time, and that in the month of June, 1892, it had replaced about twelve hundred feet in length of said flume with an iron pipe of sufficient capacity to continuously carry said one hundred and twenty-five inches of water; that said iron pipe was constructed along the line of said flume, so replaced by it, and was used in connection with the remainder of said flume for the conduct of said water continuously until during the month of November, 1896, at which time said iron pipe was taken up by defendant and replaced with said flume in the former line thereof, and on the line of said pipe, and that it ever since has been used continuously for the conduct of said one hundred and twenty-five inches of water, precisely as the same was used before said iron pipe was used; that the use and substitution of said iron pipe for a portion of said flume was a temporary use and a temporary substitution only, and that defendant never intended to abandon, and never did abandon, the right to maintain and use said flume, nor any part thereof, as the same had been constructed, maintained, and used by it, both prior and subsequent to the said temporary use of said iron pipe.

Judgment was entered upon the said findings in favor of the defendant, from which judgment, and also from the order denying plaintiff's motion for a new trial, the appeal herein is taken.

In appellants' brief one of the points made is that the court erred in admitting in evidence the question of abandonment of the flume. It will be seen, however, that this court, on the former appeal, held that the question of defendant's right to reconstruct the flume could not be determined on the pleadings as they then stood, and for that reason the case was re- manded for further proceedings, upon amended or supplemental pleadings, as the parties might be advised.

The very question involved in the present case, therefore, is, whether the defendant company had the right to restore the portion of the flume replaced by the iron pipe after being enjoined from using said iron pipe, and on this issue the pleadings in the present action properly present the case for decision, and the decision of the trial court, as already stated, is in favor of the defendant. The evidence, as well as the acts of the defendant, support the findings of the court that the defendant never abandoned the right to convey and use the water, as had been its custom for some twenty years prior thereto.

The abandonment of an old or a dilapidated flume is altogether different from the abandonment of the right to divert and use water conveyed through such flume. The substantive right is the right of diversion and use of the water; the flume is a mere means of conveying the water. In *McGuire* v. *Brown,* 106 Cal. 672, [39 Pac. 1064], it is said:—

"But the plaintiff had the prior right to the use of the water to the extent of the appropriation made by his predecessors, Beekman and Crawford, through the old ditch, prior to the defendant's settlement, together with the right to maintain such ditch. Brown's claims as a homestead settler were subordinate to those interests and his land was subject to a servitude for the support of the same. (*De Necochea* v. *Curtis,* 80 Cal. 397, [20 Pac. 563, 22 Pac. 198]; *Wells* v. *Mantes,* 99 Cal. 583, [34 Pac. 324].) It would be inflicting a severe penalty for the trespass committed by Crawford on the land of Brown and the attempt to shift the location of the ditch to hold that by that circumstance alone Crawford lost for himself and his successor, the plaintiff, all prior right to the flow of the water itself; he certainly did not intend to abandon his interest in the water."

In *Utt* v. *Frey,* 106 Cal. 397, [39 Pac. 809], it is said: "The

right which is acquired to the use of water by appropriation may be lost by abandonment. To abandon such right is to relinquish possession thereof without any present intention to repossess. To constitute such abandonment there must be a concurrence of act and intent, viz.: the act of leaving the premises or property vacant, so that it may be appropriated by the next comer, and the intention of not returning. (*Judson* v. *Malloy*, 40 Cal. 299; *Bell* v. *Bed Rock etc. Co.*, 36 Cal. 214; *Moon* v. *Rollins*, 36 Cal. 333;[1] *St. John* v. *Kidd*, 26 Cal. 272; *Richardson* v. *McNulty*, 24 Cal. 345; *Willson* v. *Cleaveland*, 30 Cal. 192.) The mere intention to abandon, if not coupled with yielding up possession or a cessation of user, is not sufficient; nor will the non-user alone without an intention to abandon be held to amount to an abandonment. Abandonment is a question of fact to be determined by a jury or the court sitting as such." Appellants' counsel also contend that the court erred in admitting the evidence as to the advice of defendant's attorney, Goodcell, in the matter, and also in overruling the objection to the testimony of the witness Gurley as to what advice said Goodcell gave, and also in overruling the objection to testimony of the witness Gurley as to whether the defendant intended to abandon the right to maintain a flume where the pipe-line was. It is further claimed by appellants that the court erred in admitting over objections similar evidence by witnesses English and Scott, on the part of the defendant.

The communication or advice of an attorney to his client may, however, be given in evidence by the consent of the client. (Code Civ. Proc., sec. 1881, subd. 2.) In this case the testimony of attorney Goodcell was given at the instance of his client, the defendant. The witnesses referred to in the objection of appellants' counsel were directors or officers of the defendant company, and their evidence was in reference to the action taken by the defendant in replacing a portion of the flume with an iron pipe, and why it was done, and it is said: "Whenever evidence of the motive or intent with which an act was done is relevant, direct testimony is admissible, although of course not conclusive evidence of such motive or intent." (11 Am. & Eng. Ency. of Law, 2d ed., p. 507.) For instance, in the testimony of the witness English

[1] 95 Am. Dec. 181.

he says: "The flume was out of repair; in fact, it virtually had to be renewed; it had been repaired so often, it virtually had to be renewed; and it was just a question with the board whether we should renew it as it was before, . . . or to try if we could to work it with a pipe, and get the benefit of it in that respect, to have it unobstructed by the leaves falling, and branches and earth sometimes getting into it. Messrs. Goodcell and Leonard were then the attorneys for the company and Goodcell was the counsel. I remember that he was consulted by the board in regard to the substitution of that pipe line"; and on cross-examination English's answers to plaintiffs' counsel were as follows:—

"Q. You say you intended to rebuild that flume when you put in the pipe?—A. Yes, sir; virtually rebuild it.

"Q. You intended to do so?—A. One or the other.

"Q. What do you mean by one or the other?—A. What I mean is that we had to renew that flume in some shape; it was so out of repair that we had to renew it in some shape; it was absolutely necessary to do something even amounting to a renewal of the flume.

"Q. Well, now you determined to put in the pipe?—A. Our engineer advised us it would be better for the reasons I have stated to put in the pipe.

"Q. I did n't ask you about the advice of the engineer. You did determine to put in the pipe.—A. Yes, sir; to try the pipe.

"Q. You put it in.—A. To try the pipe.

"Q. Now, in answer to further questions you said it was not your intention to abandon that flume, but that you did intend to rebuild it did you not?—A. Well, I don't know whether you mean by that term to rebuild it, to rebuild it identically as it was before, or to restore it in some form; we found it necessary to restore it in some form.

"Q. Well, did you restore it in some form?—A. We renewed it by putting in the pipe for the time being.

"Q. Well, now we have got the pipe in; then you were asked if you did n't intend to reconstruct that flume, and, as I understand you, that you were one of them that never intended to abandon the flume, but did intend to reconstruct it?—A. In case we were not allowed to use the pipe.

"Q. You did n't intend when you put that pipe there, ever to remove that pipe, unless you were compelled to, did

you?—A. Well, if we had found anything better I think we would.

"Q. I am leaving that out of sight; when you put that pipe there you put it there for the purpose of maintaining it there, didn't you?—A. For the time being.

"Q. For how long a time being?—A. Until we were disturbed or found something better."

All the circumstances surrounding the case, as well as the direct evidence introduced, abundantly support the findings, and show that it was never the purpose or the intention on the part of the defendant corporation to abandon its right to the diversion and use of the water by means of the flume should the iron pipe not be permitted to remain.

The judgment and order are affirmed.

Shaw, J., and Angellotti, J., concurred.