[Civ. No. 3118.   First Appellate District, Division One.—December 3, 1919.]

## O. F. GOODRICH, Respondent, v. C. WHITE MORTIMER, Administrator, etc., Appellant.

[1] QUIETING TITLE—ADVERSE POSSESSION—VOID TAX DEED AS COLOR OF TITLE.—In an action to quiet title based upon adverse possession, a void tax deed, though not admissible to prove title, is admissible for the purpose of showing color of title and possession in good faith.

[2] ID.—PURCHASE OF PROPERTY FOR BUILDING PURPOSES—ABANDONMENT OF INTENTION—POSSESSION NOT DESTROYED.—Where a person always claimed to own as good title to certain real property as could be secured by a tax deed, the property having been purchased from the grantee in the tax collector's deed as a site for

---

1. Effect of invalid tax deed as color of title within general statutes of limitations, note, 11 L. R. A. (N. S.) 772.

buildings to be erected thereon, which was the ordinary and eventual use to which the property would be put, and the entry thereon was in good faith and for the purpose of carrying out the building plans, the abandonment of the intention in ,that regard did not have the result of destroying the possession of and claim to the property.

[3] ID.—ACTUAL POSSESSION—INCLOSURE NOT NECESSARY.—To constitute actual possession the inclosure of the lot by a fence, or other structure, is not necessary, the entry being under color of title.

[4] ID.—PAYMENT OF TAXES—EVIDENCE OF CLAIM OF OWNERSHIP.— In an action to quiet title based upon adverse possession, evidence that the plaintiff, by himself and his predecessors, paid all the taxes levied on the property for twenty-six years tends to show the nature and character of the claim under which plaintiff held, and is further evidence that it has not been abandoned.

[5] ID.—KNOWLEDGE OF DEFECTS—ADVERSE CHARACTER OF POSSESSION NOT DESTROYED.—Knowledge of a defect in title is not sufficient to destroy the adverse character of the possession or rights acquired thereunder.

[6] ID.—CONVEYANCE OF LEGAL TITLE TO ANOTHER—CONTINUITY OF ADVERSE POSSESSION NOT BROKEN.—Where a person claiming title by adverse possession under a void tax deed, by a deed absolute on its face, duly recorded, conveys the property to a relative in order "to discourage" a party who is pressing a claim against her, she does not thereby divest herself of her color of title or break the continuity of her adverse possession and restore the seizin to the original owner, if she never quits, but retains and at all times maintains, her possession, and asserts her claim and color of title under the tax deed.

[7] ID.—ABANDONMENT OF LAND—LEAVING WITH INTENTION TO RETURN.—If the person in possession of land leaves it, with the intention of returning, he does not abandon it. Abandonment is a question of intention.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

3. Inclosure of land as essential to adverse possession, note, Ann. Cas. 1913A, 750.

6. Unbroken continuity as essential element of adverse possession, note, 15 L. R. A. (N. S.) 1202; what temporary break will amount to abandonment, note, Ann. Cas. 1916A, 606.

H. A. Massey, Irl D. Brett and C. S. Connor for Appellant.

George H. Moore, William B. Ogden and John F. Poole for Respondent.

WASTE, P. J.—Plaintiff brought this action against John Drew Gay and others to quiet title to a lot situate in the town of Lancaster, alleging himself and his predecessors to have been in the actual, exclusive, and adverse possession thereof, continuously for twenty years, claiming the same against the world, and having paid all taxes for the statutory time required to perfect adverse possession. After filing the complaint, appellant C. White Mortimer, administrator of the estate of Gay, was substituted as defendant. The administrator filed a cross-complaint and brought into the action certain parties claiming as mortgagees and lienholders under, but not adverse to plaintiff. Judgment was entered for the plaintiff against the defendant Mortimer, as administrator of Gay, and he alone appeals.

Gay acquired the legal title to the property during his lifetime from M. L. Wicks, by deed dated January 14, 1884. He failed to pay the state and county taxes levied thereon for the year 1890, and the property was sold by the tax collector of Los Angeles County to W. A. Dunn. He assigned the certificate thereof to Henry Hollamby, who, in due time, received the tax collector's deed. On August 11, 1892, Hollamby sold the lot to Mrs. Alice J. Rutledge, upon whose acts in the matter much depends in the determination of the question of adverse possession. Plaintiff acquired the lot from O. P. Adams by quitclaim deed dated December 27, 1909.

[1] At the trial the defendant objected to the admission in evidence of the deed from the tax collector to Hollamby on the ground that the notice and affidavit on which the deed was based were insufficient to support it. Plaintiff admitted the infirmity of the document, but relied upon it as and offered it for the purpose of showing color of title and possession in good faith, and the record indicates that it was admitted by the trial court upon that theory, which was correct. (*Packard* v. *Moss*, 68 Cal. 123, 127, 128, [8 Pac. 818]; *Kockemann* v. *Bickel*, 92 Cal. 665–667, [28 Pac. 686]; *Simmons* v. *McCarthy*, 128 Cal. 455, 458, [60 Pac. 1037].)

The property was assessed in 1893, the next year after Mrs. Rutledge acquired it, in the name of her husband; for 1894–1896, inclusive, in the name of Ella G. Parks; for 1897–1909, inclusive, in the name of Mrs. Rutledge, and for 1910–1916, inclusive, in the name of plaintiff. There were produced, and received in evidence, tax receipts, showing the payment by plaintiff of all taxes levied and assessed on the lot for the years 1910 to 1915, both inclusive. The defendant administrator then admitted that all taxes which had been levied and assessed on the property, subsequent to the eleventh day of August, 1892, had been paid by plaintiff and his grantors.

The basis of plaintiff's title is the prior possession of himself and his grantors. Appellant contends that the acts of plaintiff and his grantors, relied upon by respondent, are not sufficient to establish and maintain a title by adverse possession. In 1892, Lancaster was a small, unincorporated village, covered with sagebrush where the lots had not been cleared off. When Mrs. Rutledge purchased the lot from Hollamby she paid him the reasonable market value thereof, supposing, she testified, that she was getting a perfect legal title thereto. She intended to erect store buildings thereon, and in preparation for the work cleared the sagebrush from a portion of the lot and staked out the location of the first building. She bought some fifty thousand bricks, which were hauled to the lot and dumped in piles, three or four feet in height, scattered in rows about the place. Finding that she did not have enough money with which to erect the store buildings as she had planned, some months later she removed about half the bricks to other property, where they were used for building purposes. The bricks remaining on the lot were sold from time to time and the residents of the town carried away others. Mrs. Rutledge never inclosed the lot with a fence and never marked its exterior boundaries. There was testimony that for several years after the bricks were placed on the ground by Mrs. Rutledge the lot was used by the children of the town, these piles of bricks affording convenient "hiding places." Some of the children, now grown to maturity, and several other witnesses testified that the bricks were on the lot during that time and as late as 1900. Plaintiff testified that he bought from Mrs. Rutledge, and paid for, bricks taken from the lot as late as 1907.

There was further testimony that the witnesses "knew" Mrs. Rutledge was the owner of the lot; that they "understood" so; that that was the "general understanding" in the town of Lancaster; that "the general public understood" she owned it; that it was generally spoken of as "the Rutledge lot," and later as the "Goodrich lot." Some of the witnesses testified that it was "generally understood" that Mrs. Rutledge, and plaintiff, had a "tax title" to the lot.

Plaintiff leased the lot through Adams in 1908, and for a time used it as the site of a tent in which he maintained a bowling-alley. Soon after he acquired the property in 1909 he cleared the lot, repaired the sidewalk, placed a barrier to ward off trespassers, and erected three buildings on the premises. At the time of the trial it was shown that Lancaster was still a small, unincorporated village of about six or seven hundred inhabitants. Judging from the entire record, it does not appear that there was much, if any, demand for real estate in the community from 1892, when Mrs. Rutledge entered into possession, until the advent of good roads and highways, about the time the present action was begun. The lot in question was covered with sand and sagebrush. The use the owner put it to during that time was about the only use it was adapted to in view of the needs of the community.

[2] Mrs. Rutledge always claimed to own as good title to the property as could be secured by a tax deed. It was purchased by her as a site for buildings to be erected thereon, which was undoubtedly the ordinary and eventual use to which the lot would be put. Her entry thereon was in good faith and for the purpose of carrying out her building plans. Her abandonment of her intention in that regard did not have the result of destroying her possession of and claim to the property, which was asserted in the manner before recited. (*Montgomery & Mullen Lumber Co.* v. *Quimby,* 164 Cal. 250–253, [128 Pac. 402].) [3] To constitute actual possession the inclosure of the lot by a fence, or other structure, was not necessary, the entry being under color of title. (*Hicks* v. *Coleman,* 25 Cal. 122, 133, [85 Am. Dec. 103].) In the instant case there was such an appropriation of the land by the claimants as to convey to the community where it was situated visible notice that it was in their exclusive use and enjoyment. Such possession was sufficient.

(*Lofstadt* v. *Murasky*, 152 Cal. 64, 68, [91 Pac. 1008].)
[4] Plaintiff, by himself and his predecessors, paid all the taxes levied on the property for twenty-six years. This fact tended to show the nature and character of the claim under which plaintiff held and was further evidence that it had not been abandoned. (*Baum* v. *Reay*, 96 Cal. 462, 466, [29 Pac. 117, 31 Pac. 561].)

The lower court was correct in holding that the possession of the plaintiff and his grantors, as indicated by their foregoing assertion of control over the property, based as it was upon a claim of title, founded upon a written instrument, as being a conveyance of the property in question, was sufficient to constitute adverse possession for the required statutory period. (Code Civ. Proc., sec. 322; *Cousino* v. *Western Shore Lumber Co.*, 179 Cal. 1, [175 Pac. 406]; *Kockemann* v. *Bickel*, *supra*.)

Appellant attempts to weaken respondent's position somewhat by calling attention to the fact that both he and Mrs. Rutledge had knowledge of the infirmity of Mrs. Rutledge's title before plaintiff acquired the property. There is no merit in the suggestion. [5] The knowledge of a defect in title is not sufficient to destroy the adverse character of the possession or rights acquired thereunder. (*Montgomery & Mullen Lumber Co.* v. *Quimby*, *supra*.)

[6] During 1893, in order "to discourage" a party who was pressing a claim against her, Mrs. Rutledge, by deed absolute on its face, duly recorded, conveyed the lot and other property to her cousin, Ella G. Park. Mrs. Park did not attempt to take possession of the property. She did not pay any of the taxes, made no claim of any actual interest therein, and on August 25, 1899, at the request of Mrs. Rutledge, reconveyed the lot to her. Basing his contention on these facts, appellant contends that when Mrs. Rutledge executed the deed to Mrs. Park she divested herself of her color of title, and, as a result, there was a break in the continuity of her adverse possession and a restoration of the seizin of Gay. The answer to this contention must rest in the fact that Mrs. Rutledge never parted with whatever right and title she acquired through the tax deed to Hollamby, her immediate predecessor, and his deed to her. While her record title passed to Mrs. Park, she never quit, but retained and at all times maintained her possession, and asserted her

claim and color of title under the tax deed. She never parted with such ownership. Mrs. Park held the record title in trust for, and subordination to the will and pleasure of Mrs. Rutledge. Defendant made no attempt to establish to the contrary. The facts at bar serve to distinguish the cases cited by appellant. In the instances therein considered, as we read them, there was an actual passing of all estate and interest of ownership, as well as of title, in some cases to the true owner, and in others to a stranger.

What we have said in relation to the deed to Mrs. Parks would apply with equal force to the deed from Mrs. Rutledge to her son Adams, executed in 1905, and which appears to have been given for a similar purpose. Another element enters into the consideration of that transaction, however, for the claim of Mrs. Rutledge had long prior thereto ripened into a prescriptive title, through her entry in 1892, under color of right and her continued adverse possession and payment of taxes for nearly thirteen years.

The fact that Mrs. Rutledge did not live continuously in Lancaster during her alleged adverse possession, considered in the light of all the other features in the case, did not work an abandonment of her claim. **[7]** If the person in possession of land leaves it, with the intention of returning, he does not abandon it. Abandonment is a question of intention. (*Moon* v. *Rollins,* 36 Cal. 333, 338, [95 Am. Dec. 181]; *Wood* v. *Etiwanda Water Co.,* 147 Cal. 228, 234, [81 Pac. 512].)

The judgment is affirmed.

Kerrigan, J., and Richards, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 29, 1920.

All the Justices concurred, except Kerrigan, J., *pro tem.,* who was absent.