[Crim. No. 1341. Second Appellate District, Division Two.—October 14, 1926.]

## THE PEOPLE, Respondent, v. DANIEL RIORDAN, Appellant.

[1] CRIMINAL LAW—EMBEZZLEMENT—EVIDENCE—SUPPORT OF VERDICT. In this prosecution of an attorney for embezzlement of his client's money and securities, it is held that there is abundant evidence to sustain the verdict finding the defendant guilty.

[2] ID.—JUDGMENTS—EVIDENCE—VERDICT.—It is within the province of the jury to determine the truth of and the weight to be given to the evidence, and, having done so, their verdict is conclusive, and a judgment will not be reversed on the ground of insufficiency of the evidence, unless there is no substantial evidence to support the verdict, or unless the evidence is so inconsistent or improbable as to be unworthy of credence.

[3] ID.—EMBEZZLEMENT—VALUABLE SECURITIES—PLEADING—EVIDENCE. Under section 1131 of the Penal Code, in proving the embezzlement of valuable securities the allegation of the indictment is sustained if the offender be proved to have embezzled any valuable security, although the particular valuable security be not proved.

[4] ID.—EMBEZZLEMENT BY AGENT—RETURN OF SECURITIES—DEMAND UNNECESSARY. — In a prosecution for embezzlement of certain promissory notes assigned by the prosecuting witness to defendant as her agent and attorney, where there is testimony that the assignment was not understood by the parties to be for the purpose of transferring title to the notes, but only to permit the defendant more readily to deal with them as such attorney and agent for the prosecuting witness, the defendant cannot question his principal's ownership, and it is not necessary for the owner of the notes to have first made a demand for the return of the notes in order to constitute the offense of embezzlement.

---

2.   See 8 Cal. Jur. 591; 2 R. C. L. 194.

[5] ID.—JURIES AND JURORS—EXAMINATION AS TO QUALIFICATIONS—GENERAL QUESTIONS—INDIVIDUAL JURORS.—Where the trial court, in examining prospective jurors regarding their qualifications generally, asked them collectively if they would give the same answers as given to the qualifying questions propounded by the court, the defendant was not prejudicially affected by the refusal of the trial court to permit counsel for defendant to test the qualifications of individual jurors, although the better practice would be to permit each juror to answer for himself.

[6] ID.—QUESTIONS SERVING AS BASIS FOR PEREMPTORY CHALLENGE—DISCRETION.—The trial court has full discretion to refuse permission to ask questions of jurors serving only as a basis for a peremptory challenge.

[7] ID.—WITNESSES — IMPEACHMENT — INSTRUCTIONS — TRIAL. — In a prosecution for embezzlement, where the district attorney on the ground of surprise and apparent hostility of a witness, who contradicted his own testimony, obtained permission to examine the witness further, a statement by the trial court that the evidence might not tend to impeach the witness' direct testimony, but that he having testified both ways, it was presumably offered for the purpose of impeaching his conflicting story upon cross-examination, did not amount to an instruction that the witness was hostile, the trial court having told the jury and counsel that the court expressed no opinion, and made no ruling, as to the attitude of the witness.

[8] ID. — ATTORNEY AND CLIENT — PRIVILEGED COMMUNICATIONS — WAIVER—EVIDENCE.—Under section 1881 of the Code of Civil Procedure, the secrecy thrown about confidential communications between attorney and client is for the protection of the client, which he may waive if he chooses, and the fact that the client's testimony tends to impeach the attorney is no ground for objection to its admissibility.

(1) 20 C. J., p. 486, n. 60.   (2) 16 C. J., p. 930, n. 93; 17 C. J., p. 255, n. 55, p. 256, n. 60.   (3) 20 C. J., p. 479, n. 6.   (4) 20 C. J., p. 429, n. 31, p. 455, n. 37 New.   (5) 35 C. J., p. 399, n. 22.   (6) 35 C. J., p. 387, n. 33.   (7) 16 C. J., p. 834, n. 1.   (8) 40 Cyc., p. 2397, n. 62, 63.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a new trial. Charles S. Burnell, Judge. Affirmed.

The facts are stated in the opinion of the court.

6.   See 15 Cal. Jur. 434; 16 R. C. L. 246.
8.   See 27 Cal. Jur. 55.

W. T. Helms and W. R. Barnes for Appellant.

U. S. Webb, Attorney-General, and H. H. Linney, Deputy Attorney-General, for Respondent.

CRAIG, J.—The defendant was convicted of the crime of embezzlement and appeals from the judgment and from an order denying his motion for a new trial. The indictment consisted of five counts and the jury returned a verdict of guilty upon the first, fourth, and fifth counts.

The charges upon which appellant was convicted were, respectively, that as the agent and bailee of one Clara E. Burg, he did during the months of June and July, 1925, wilfully, unlawfully, fraudulently, and feloniously convert, embezzle, and appropriate to his own use a $3,500 promissory note of the value of $1,525, $300 in cash, and a promissory note for $5,991.71, of the total value of $5,591.71.

Since the appellant urgently insists that the verdict and judgment as to all three counts are not only contrary to the evidence, but that "there does not appear to be any evidence of the commission of any crime whatsoever on the part of the defendant," we deem it imperative that this point receive first consideration. If appellant were correct in this view of the case consideration of other issues would become unnecessary. A concise detail of the facts may facilitate clarity and obviate the necessity for extended discussion of manifestly incidental and dependent questions.

[1] There is evidence tending to show the following facts, which, in view of the verdict, we must assume to be true: Miss Burg, the complaining witness, at the time she first met the defendant was the owner of a promissory note executed to herself by Charles B. Widmeyer and wife for $3,500, upon which had been indorsed thirteen credits of $75 each, and one of $1,000, on account of the principal. She also owned a promissory note executed to herself by Clyde Colby and wife for $5,991.71, upon which were indorsed payments on account of principal amounting to $500. Each note was secured by a trust deed. Previously to February 22, 1925, Miss Burg had adjusted a business transaction with one Sanders by crediting the sum of $1,000 upon the note of Widmeyer, who in turn executed his promissory note to Sanders for a like amount. Being dissatisfied

with such settlement, she desired to collect the $1,000 from either Widmeyer or Sanders, and consulted the appellant, who was then a licensed, practicing attorney. At the instance of appellant Miss Burg subsequently returned to his office with various documents, including the Widmeyer note and trust deed and the Colby trust deed, which she left with the defendant, and for which she was given a receipt. She testified that upon inspection of the papers Riordan said: "Defraud! Embezzlement! Criminal offense! Penitentiary act! I can get the money for you immediately. All fraud. Illegal. I can annul the whole thing." He was then employed to collect the $1,000, and the parties agreed upon a fee of $500, of which she paid $100 at that time, and $150 thereafter. Appellant subsequently obtained from Miss Burg a power of attorney, of which he forwarded a copy to Widmeyer, and notified the latter that future installments of $75 falling due on the note should be paid to Riordan. Four such payments were so made, and constitute the basis for the fourth count of the indictment herein. It is conceded that appellant paid Miss Burg no money, but during the month of May or June he visited her and inquired as to whether or not she had received the $1,000 from Widmeyer, to which she replied in the negative. Appellant thereupon drew a red line through this credit on the back of the note, and caused her to sign an indorsement thereon, prepared by himself, stating that said sum had not been paid and that the entry was a mistake which she thereby corrected. Appellant thereafter sold this note to one B. S. Yost for $1,149, and when introduced in evidence it bore three additional indorsements, one signed by Clara E. Burg, transferring to Riordan all her right, title, and interest therein, one signed by Riordan purporting to reinstate the credit of $1,000, and also Riordan's assignment to Yost. The prosecuting witness testified that she did not remember having signed such transfer to the defendant.

The Colby note, when introduced in evidence, bore an indorsement signed by Clara E. Burg, transferring and assigning all her rights therein to Riordan, and a like indorsement by Riordan, assigning the same to Florence W. Evans. Miss Burg testified that appellant obtained this note from her upon the pretext that he required it in connection with a suit against Sanders, but that there was no writing above

her indorsement when she signed her name. She also testified that appellant, when asked for the Colby note, stated that he had traded it for two mortgages. Mrs. Evans testified, and the defendant admitted, that he transferred this note to her as part of the consideration for a piece of real property which he purchased from her. In the foregoing there is abundant evidence to sustain the jury's verdict.

The defendant testified that he exchanged the Widmeyer note for shares of stock in the G. E. Miller Company, in the interests of Miss Burg, and that he obtained the Colby note for the purpose of raising $2,500 to $3,000 required to finance a $50,000 suit which he had instituted for her against Mr. and Mrs. Sanders. It was testified that the Miller stock was worthless in any event, and, also, Miss Burg unqualifiedly denied having had any such arrangement with the defendant. He also testified that Miss Burg had assured him that he need not pay her the $300 which he had collected, since she had full value in stock and was therefore "not entitled to the $300." This, also, she denied.

Much argument is forcefully advanced on behalf of appellant attacking the credibility or reliability of the testimony of the prosecuting witness because of her advanced years. It is said by his counsel that she was "a woman over sixty, almost an imbecile, in the hands of a crooked lawyer, also over sixty, and the lawyer is not only crooked, but criminal." The most of these diagnoses are expressly approved by counsel for respondent, except the assertion that the victim of the alleged swindles was verging upon senile dementia. The jury, under exhaustive instructions of the trial court, passed upon the credibility of this witness, and the weight to be given to her testimony. There was much oral, documentary, and circumstantial evidence which abundantly substantiated her statements. The defendant's culpability is not lessened by the fact that he was a member of the bar of this state, sworn to protect the interests of one whom he asserts to have been "almost an imbecile." His explanations on the stand, under oath, were in the main positively and directly contradicted by those with whom he testified to having had dealings. [2] It lay within the province of the jury to determine as to the truth of and the weight to be given to the evidence, and, having done this, their verdict is conclusive. A judgment will not be reversed on the

ground of insufficiency of the evidence unless there is no substantial evidence to support the verdict upon which it is based, or unless the evidence is so inconsistent or improbable as to be unworthy of credence. (*People* v. *Niino*, 183 Cal. 126 [190 Pac. 626].)

The indictment charged that on the dates of the alleged embezzlements the Widmeyer note was of the value of $1,525 and that the Colby note was of the total value of $5,991.71, whereas the evidence tended to show that after allowing proper credits their values were, respectively, $1,443.61 and $5,481.71. It is contended by appellant that this shows by absolute mathematical demonstration that he was convicted of crimes which could not have existed. In legal effect this criticism amounts to an assertion that there was a fatal variance between the allegations of the indictment and the proof.

[3] There is no merit in this contention for the reason that in proving the embezzlement of valuable securities the allegation of the indictment is sustained if the offender be proved to have embezzled any valuable security, although the particular valuable security be not proved. (Pen. Code, sec. 1131.) *People* v. *Gray*, 66 Cal. 271 [5 Pac. 240], applied this provision of the code to the embezzlement of money, where the amount proved was less than that alleged. The section expressly includes "valuable securities," and applies the same rule to the embezzlement of them as to that of money. In the instant case it is clear that the securities embezzled were proved to have been "valuable securities."

[4] It is further insisted that the assignment of the notes to Riordan divested Miss Burg of their ownership, and that she had no interest which the defendant could have embezzled. There was testimony to the effect that the assignment was not understood by the parties to be for the purpose of transferring title to the notes, but only to permit the defendant to more readily deal with them as Miss Burg's attorney and agent. Under such circumstances he cannot question his principal's ownership. Also appellant argues that there was no embezzlement of the $300, since there was no showing that Miss Burg made demand for its return, or as to the disposition made of the funds by himself. As we have seen, it appears from the defendant's own testimony that the notes were indorsed to him for use in the promotion of

Miss Burg's personal business interests, which constituted him her agent and bailee. He also testified that Miss Burg told him, in effect, that he might retain the $300. It is immaterial as to what he may have done with the money. If it was Riordan's own property its use was a matter of his personal concern, whereas if he collected it as the attorney and agent for Miss Burg no demand was necessary. (*People* v. *Goodrich*, 142 Cal. 216 [75 Pac. 796].) However, it appears that on July 13, 1925, demand was made for the delivery forthwith of all papers or other property belonging to Miss Burg.

Thirty-two requested instructions of the defendant were marked by the trial court "refused, except as covered by instructions given," and the refusal to give them is assigned as error. We think from a careful reading of the instructions given that they covered the issues of the case. The portions which the court excluded were not erroneously admitted, and appellant's general criticism of the action of the trial court in this respect does not attempt to indicate wherein any prejudicial error was committed.

[5] The trial court examined the prospective jurors generally, by propounding questions which in themselves properly expounded the law as to the duties of jurors, stating that the fact that the defendant was indicted was no evidence of guilt, that he should be presumed innocent at all stages of the proceedings until and unless proven guilty beyond a reasonable doubt, and that the jury should adhere to such presumption throughout the trial. They were then asked collectively if they felt that if charged with an offense of like character they would be unwilling to be tried by jurors each of whom was of the same frame of mind as themselves, if they could give the defendant a fair and impartial trial, if they would be guided by the presumption of innocence as defined by the court, and if they would be governed by the evidence and the instructions which the court would give them. To each of these questions it appears that there was "no response." Defendant's counsel then began an examination of one of the jurors, whom he interrogated somewhat thoroughly, but when later counsel turned to the next juror the court interrupted, saying: "Just a moment. Are there any of the other jurors in the box who would answer any of the questions that counsel has just asked in any other

or different manner than as answered by Mr. Buchanan?''
To this question there was no response. Counsel there-
upon asked: ''Can I interrogate any of the other jurors?''
To which the court responded: ''They have all answered
those questions in the same way. That is a fact, is it not,
ladies and gentlemen?'' To this question the record shows
the following answer: ''Jurors: Yes.'' The court then
stated: ''They so indicate. No use repeating and covering
the same ground. . . . You may ask any other or different
questions, but not the questions that have already been asked
and answered.'' Counsel again attempted to ask some of the
questions of individual jurors which had been ·propounded
to them in a body, but was not permitted to do so.

It is contended on behalf of the appellant that this was
improper and insufficient examination to test the qualifica-
tions of the jurors; that their silence was no answer what-
ever, whereas the trial court ruled that they did answer,
and thus deprived the defendant of all opportunity to fairly
ascertain the condition of mind of each juror.

It was said by the court during the proceedings that the
jurors had served repeatedly in other cases and were familiar
with their duties and with the necessary qualifications.
When asked collectively if they were acquainted with the
defendant, Juror Farnsworth promptly stated that he had
known him casually at Pasadena, and the juror was examined
at length in this respect. The juror was ultimately excused.

In *People* v. *Edwards,* 163 Cal. 752 [127 Pac. 58], the
authorities were reviewed and the supreme court proceeded
to ''declare the rule so that the trial courts may confidently
follow it.'' It was there said: ''The conclusion is that there
is no statutory authority for the examination of jurors solely
for the purpose of a peremptory challenge or for the allow-
ance of questions which do not tend to prove some fact
material to a challenge for cause.''

As we have stated, the jurors were asked if they would
give the same answers which Mr. Buchanan had given in
their presence to questions theretofore propounded, to which
they replied, ''Yes.'' The defendant's counsel then at-
tempted to ask some of the same qualifying questions which
the court held to have been answered, but when given ample
opportunity to ask other or different questions which he

might deem of importance in determining whether or not there was ground for challenge, he declined to do so.

[6] The complaint of appellant is therefore reduced to the refusal of the court to allow questions which it ruled had been asked and answered. As to those which were asked for the purpose of a peremptory challenge only, the trial court had full discretion. Since it need not allow such questions to be asked at all, it is plain that no error can have been committed, though the ruling that they had been asked and answered was incorrect. Questions which the court had asked the jurors generally appear to have been of that class.

Some of the questions put to the Juror Buchanan by counsel for the defendant would, if answered, have been a possible basis of challenge for cause, but the court ruled that these questions when asked of one juror had been asked and answered, and the record shows this to be the case, that is, that the jurors other than Buchanan answered collectively. It is usually better practice to have each juror say for himself whether or not he would answer any of the questions asked of another juror differently from the answers given by the latter. When the jurors are examined *en masse* there is a considerable likelihood of a juror not fully understanding the question and remaining silent, when, should he give an answer, it might show ground for challenge. Also, the reporter might easily be mistaken in concluding that all of the prospective jurors being questioned had responded "yes," or "no," and yet we cannot say as a matter of law that the method pursued in this case under the circumstances shown by the record did not result in the question asked of Juror Buchanan being answered by the others. It is certain that there is nothing to impeach the record, which shows that they were answered.

In some states it is provided by statute that the examination of jurors in criminal cases shall be directed to "each juror," "any juror," or "a juror," while in other states such limitation applies only to capital cases. It has been held, however, that in the absence of such legislation the examination of jurors is largely within the sound judicial discretion of the trial court. (*Commonwealth* v. *Nye*, 240 Pa. 359 [87 Atl. 585]; *State* v. *McGee*, 80 Conn. 614 [69 Atl. 1059]; *State* v. *Munch*, 57 Mo. App. 207; *Connors* v. *United States*, 158 U. S. 408 [39 L. Ed. 1033, 15 Sup. Ct.

Rep. 951, see, also, Rose's U. S. Notes] ; *Murphy* v. *United States,* 7 Fed. (2d) 85.) It has repeatedly been decided that in jurisdictions where no statutory limitation or restriction of such examination to individual jurors exists, a judgment will not be reversed unless it shall affirmatively appear that the defendant was precluded from interrogating the jurors upon matters not theretofore covered, or that any juror who served was prejudiced or not qualified. (*Nichols* v. *State,* 97 Tex. Cr. 174 [260 S. W. 1050] ; *Murphy* v. *United States,* 7 Fed. (2d) 85; *State* v. *Munch,* 57 Mo. App. 207; *Johnson* v. *State,* 29 Wyo. 181 [211 Pac. 484].) While not intending to encourage this method of examining jurors, we cannot say that its use in this case constituted an invasion of the defendant's substantial rights to his prejudice.

It is further contended that objections of the district attorney were improperly sustained during cross-examination of the prosecuting witness. It is said that the excluded evidence was offered for the purpose of impeaching the witness, but none to which our attention is called tended to impeach her. Furthermore, much of the testimony then sought to be elicited was subsequently admitted. We find no error in this respect.

[7] A witness for the people contradicted his own testimony during cross-examination, and the district attorney thereafter confronted him with a verified answer, which he had filed in another suit, involving the same property about which he was testifying. Allegations of this said answer, which tended to support his testimony on direct examination, were read to him, and he admitted having verified the answer. The defendant moved to strike out the paragraph which had been read, which motion was denied, whereupon his counsel inquired if the witness was to be deemed hostile to the prosecution. The court replied that it had ruled upon the objections and motions, but expressed no opinion in the matter, as that was a question for the jury to decide. It is contended that under the circumstances and the ruling permitting the district attorney to "cross-examine his own witness," it amounted to an absolute statement by the court that the witness was, in fact, hostile. There is no merit in this point. Permission was asked by the district attorney, upon grounds of surprise and apparent hostility, to examine the witness further, and was granted. The court stated in

79 Cal. App.—32

reply to the defendant's motion that the evidence might not tend to impeach the witness' direct testimony, but that he having testified both ways, it was presumably offered for the purpose of impeaching his conflicting story upon cross-examination.  This did not amount to an instruction that the witness was hostile.  The jury and counsel were told that the court expressed no opinion, and made no ruling, as to the attitude of the witness.

The defendant during cross-examination . declined to answer certain questions upon the ground that they involved confidential relations between himself and a client.  The latter thereafter testified to the transactions in question, and stated that she had no objection to Riordan testifying, expressly waiving her right to so object.  It is here contended that such testimony was coerced, was confidential and an attempt to impeach the defendant.  The record does not support such assertions.  The witness contradicted testimony of the defendant, stating that she realized nothing from the stock which appellant transferred to the prosecuting witness at an assumed valuation of $2,600.  It was no concern of his if his former client waived the right to treat their transactions and conversations as confidential. **[8]**  The secrecy shown about communications of this character is a legal protection to the client, but there is no bar to its revelation if the client chooses to waive the rule.  (Code Civ. Proc., sec. 1881; *Hardy* v. *Martin,* 150 Cal. 341 [89 Pac. 111]; *Wood* v. *Etiwanda Water Co.,* 147 Cal. 228 [81 Pac. 512]; *Estate of Nelson,* 132 Cal. 182 [64 Pac. 294].)  Nor is the fact that her testimony tended to impeach the defendant any ground for objection to its admissibility.

Many rulings of the court are seriously assailed.  We have examined them all.  In some instances error was committed.  For instance, the prosecuting witness was being examined in response to a question which called for the answer either of "yes" or "no."  She began, "My contractor said," when the defendant's counsel attempted to interpose an objection.  The court, instead of preventing the witness from stating obviously irrelevant and hearsay matter, allowed her to finish her answer, and then struck it out and instructed the jury to disregard it.  However, it cannot be said that the defendant was prejudiced by this or other error in the reception of evidence to which our attention has been called.

Other alleged reasons for reversal are founded upon questions asked by the trial court of a Mrs. Herrin; that the district attorney was hypercritical and disdainful toward the defendant; that the latter's admission to the bar of another state was immaterial; that when he offered to explain the court ruled that it was a matter for his counsel to determine if deemed advisable, and that the court criticised the defendant's methods when passing sentence. These and other questions have been carefully considered, but in view of what has been said, we think, if in any instance there was slight error, it was not such as to justify a reversal.

The judgment and order appealed from are affirmed.

Works, P. J., and Thompson, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal was denied by the supreme court on December 13, 1926.