[Civ. No. 3922. Third Appellate District.—January 28, 1930.]

ABRAHAM B. COHN, Appellant, v. SAN PEDRO, LOS ANGELES & SALT LAKE RAILROAD CO. (a Corporation), Respondent.

Newby & Newby for Appellant.

Fred E. Pettit, Jr., E. E. Bennett and Harry B. Ellison for Respondent.

PRESTON (H. L.), J., *pro tem.*—Plaintiff, Abraham B. Cohn, brought this action to quiet title to a piece of real estate situated in the city of Los Angeles. The case was tried by the court without a jury and judgment was entered in favor of the defendant railroad company, from which judgment plaintiff appeals.

The pleadings admit these facts: Appellant, Abraham B. Cohn, was, prior to December 8, 1902, the owner in fee of lot 9, block "A" of Jacoby & Thorne's Subdivision of a part of the "Blow Track" in the city of Los Angeles. On December 8, 1902, the respondent, by its then corporate name—San Pedro, Los Angeles and Salt Lake Railroad Company, acquired the property above described from the appellant, Abraham B. Cohn, by its right of eminent domain. The final decree of condemnation reads, in part, as follows: "It is ordered, adjudged and decreed that the lands and premises described in plaintiff's complaint and in this decree hereinafter described, become the property of the plaintiff for use as a right of way for its sidetracks, turn-outs, roundhouses, switches, freight yards and such other uses and purposes as are necessary and incident to constructing, maintaining and efficiently operating plaintiff's line of steam railroad. The land and premises affected

by this judgment and order are particularly described as follows, to-wit: Lot 9 in Block 'A' . . . , all in the Jacoby & Thorne's Subdivision of the part of the Blow Track in the City of Los Angeles, County of Los Angeles, State of California, as per map recorded in Book 18, page 97, Miscellaneous Records of said County. . . . ''

At the time the final decree of condemnation was entered Anderson Street, which was sixty feet wide, bounded the lot in question on the east, but in 1905 the city of Los Angeles, by proper proceedings, abandoned Anderson Street. The lot in question, together with the abandoned portion of Anderson Street, has been used by respondent for railroad purposes ever since its acquisition by respondent, and particularly used for its roundhouses, shops, stores, building tracks, etc.

In September, 1924, respondent commenced the moving of its roundhouses, shops, storehouse and tracks from the vicinity in which this property was situated to its new terminal known as ''East Yards,'' near Telegraph Road, city of Los Angeles, at which time the buildings above referred to were dismantled and the tracks leading to and from said buildings were removed. The dismantling of said buildings and the removal of the tracks and the reconditioning of the property in question consumed considerable time. After the buildings were dismantled and the tracks removed, and during the period of removal, the property herein involved was used for the storing of railroad materials incidental to and made necessary by the dismantling of the buildings, the removal of the tracks, etc.

On or about the twelfth day of June, 1925, respondent moved on to the lot here in question a house to be used as the headquarters of, and living accommodations for, its section foreman in charge of the railroad property and line of railroad in this vicinity. Respondent's line of railroad tracks are located between 350 and 400 feet west of the lot in question, between which there are several tracks used for storage and switching.

The plaintiff and appellant commenced this action during the removal period and while the railroad materials were being stored on the lot in question, and three days before the section foreman's house was moved on to the said lot. The house has been used by the railroad company as section

foreman's house and headquarters in connection with the operation of its railroad ever since it was moved on said premises.

Added to these admitted facts, we have the testimony of plaintiff himself to the effect that on or about April 1, 1925, the general manager of respondent railroad company called upon him and admitted that plaintiff was the owner of the lot and also the thirty-foot strip acquired by the abandonment of Anderson Street, and offered to purchase the entire property from plaintiff, etc.

The trial court found that, by virtue of said final order of condemnation, the respondent entered into possession of said parcel of land described in plaintiff's complaint in this action, and "said parcel was thereupon placed in use for the purposes in said judgment and final order of condemnation mentioned; and that said parcel of land at all times since has continuously been so possessed and used, and is now so possessed and used; and that the plaintiff in this action, by virtue of said condemnation proceedings, has but a bare legal title to the land described; subject, however, to the right of way and easement hereinbefore mentioned."

■ Appellant contends that there has been an abandonment by the railroad company of the rights acquired by the eminent domain proceeding, and that the use of the premises by the railroad company has been contrary to the judgment and final decree in the condemnation proceeding.

We find no merit in either of these contentions. The law is well settled that the abandonment in such a case is made up of two elements, viz.: "Act and Intention." (*Wood* v. *Etiwanda Water Co.*, 147 Cal. 228 [81 Pac. 512, 514]; see Elliott on Railroads, 3d ed., Book 2, pp. 1171 and 1223.) The "act and intention" were both questions of fact to be determined by the court; or, in other words, abandonment is a question of fact to be determined by a jury or the court, when sitting without a jury. (*Wood* v. *Etiwanda Water Co., supra,* and cases there cited.)

In *Wood* v. *Etiwanda Water Co., supra,* it is said: "To constitute abandonment, there must be a concurrence of act and intent, viz.: the act of leaving the premises or property vacant, so that it may be appropriated by the next comer and the intention of not returning." (*Judson*

v. *Malloy et al.*, 40 Cal. 299; *Bell et al.* v. *Bed Rock Tunnel & Min. Co.*, 36 Cal. 214; *Moon* v. *Rollins*, 36 Cal. 333 [95 Am. Dec. 181]; *St. John* v. *Kidd*, 26 Cal. 272; *Richardson* v. *McNulty et al.*, 24 Cal. 345; *Willson* v. *Cleaveland*, 30 Cal. 192.) The mere intention to abandon, if not coupled with yielding up possession or a cessation of user, is not sufficient; nor will the nonuser alone, without an intention to abandon be held to amount to an abandonment."

The trial court found, as above indicated, that the respondent *never abandoned* the use of the property in question for railroad purposes. This finding is amply supported by the evidence; in fact, we are unable to find any substantial evidence that would support a contrary conclusion. The findings of the trial court are, therefore, conclusive on appeal.

Appellant lays great stress upon the conversation that he had with the general manager of respondent, looking toward the purchase of the fee in the land in question, to establish an intention to abandon on the part of respondent, but this evidence falls far short of establishing an intention to abandon on the part of the respondent. The conversation, viewed in its most favorable light to appellant, establishes nothing more than an attempt on the part of the respondent to purchase from the appellant *the fee in the property*, which, according to appellant's own testimony, he refused to sell, and as a result thereof the evidence clearly shows that respondent continued using the property for the purpose for which it was dedicated under the eminent domain proceedings.

There is no substantial evidence in the record to support the contention of appellant that the property in question was not being used for railroad purposes. The trial court also found against appellant upon this point, and we are fully satisfied that the trial court's conclusion was correct.

The next and final question presented by this appeal is this: Has plaintiff the right in this action to have his title quieted to that portion of Anderson Street vacated by the city of Los Angeles in 1905, while respondent was using the lot in question for railroad purposes in accordance with the condemnation judgment? This contention is raised in this court for the first time. It was not made an

issue by the pleadings, nor was it contended for at the time of the trial. For this reason alone the appellant is not permitted to urge this point in this court for the first time. However, when a city, by ordinance, abandons a public street, one-half thereof reverts to the abutting owner. Respondent admits this to be true, but contends that the *fee owner* may not in such a case take possession of the abandoned portion without regard to the rights of the person holding *an easement over the fee*. In view of the record here presented, we think this contention must be sustained. (*Challiss* v. *Atchison Union Depot & R. R. Co.*, 45 Kan. 398 [25 Pac. 894].)

We think the judgment of the court below was correct and should be affirmed, and it is so ordered.

Finch, P. J., and Thompson (R. L.), J., concurred.